**HUNTER et al. v. ATCHISON,
T. & S. F. RY. CO. et al.**

No. 10254.

United States Court of Appeals.
Seventh Circuit.

March 26, 1951.

Rehearing Denied May 1, 1951.

Jack A. Williamson, Burke Williamson, Chicago, Ill. (Adams, Williamson & Turney, Robert McCormick Adams, Chicago, Ill., of counsel), for appellants.

William J. Milroy, Chicago, Ill. (R. S. Outlaw, Chicago, Ill., of counsel), for appellee A., T. & S. F. R. Co.

Richard E. Westbrooks, Claude W. B. Holman, William P. Rhetta, Jr., all of Chicago, Ill. (Ellis & Westbrooks, Chicago, Ill., of counsel), for appellees Hunter and others.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

DUFFY, Circuit Judge.

In 1944, plaintiffs, a group of train porters and chaircar attendants employed by the Sante Fe Railway Company (hereinafter called "Santa Fe"), commenced this action upon behalf of all members of a class asking the court to enjoin the defendants from enforcement of Order and Award 6640 of the National Railway Adjustment Board (hereinafter called "Adjustment Board"). In the complaint herein plaintiffs allege that they are employees at will, but with seniority rights, that their employment is threatened by Award 6640 of the Adjustment Board's First Division, dated April 20, 1942, that said award was and is void in that they were parties involved in the dispute before the Adjustment Board between the Sante Fe and the Brotherhood of Railroad Trainmen (hereinafter called "BRT"), but that they had no notice of the proceedings therein. The defendants named are the Sante Fe; the Adjustment Board, its members and secretary; F. W. Coyle, a vice president of BRT; and nine individual brakemen members of BRT as representatives of a class.

In the dispute it was the claim of the brakemen that their working agreement with the Sante Fe covered all braking duties including those performed by train porters on the head end of the Santa Fe passenger trains. On the other hand the train porters pointed out that since 1900 they have continuously performed the disputed work, that although they do not have a collective bargaining agreement the railroad carries them on separate seniority rosters, and that under operating rules promulgated in 1904 and through custom and practice extending over fifty years, they have a contractual right to perform such services.

The dispute as to which employees should have the right to do the work is of long standing, dating back to about 1900. In 1925 a protest was made by BRT to Train Service Board of Adjustment for the Western Region, the basic issue being the same as the one here under consideration. On September 9, 1926, the Train Service Board ruled against the claim of BRT. Thereafter BRT negotiated a schedule agreement with Sante Fe, effective December 1, 1926. Thereafter BRT again presented the same issue to the Train Service Board, which, on February 8, 1927, again denied their claim. Prior to this latter decision, the parties had entered into a written agreement that the decision in the case should be final and binding upon the parties to the dispute.

Award 6640 resulted from a protest which BRT filed in 1939 upon behalf of four brakemen in Texas. It is admitted that the Adjustment Board did not give notice of the proceedings or hearing to the plaintiffs herein. The Adjustment Board, with five dissenting votes, found that the Santa Fe's use of porters not holding seniority as brakemen for the performance of duties on the head end of passenger trains was a violation of the brakemen's seniority rights, and that their specific claims then on file for lost wages should be allowed.

Thereafter, upon demand of the brakemen, the Sante Fe notified plaintiffs that the Adjustment Board's award would be immediately enforced against them by their removal from their regular runs, and that they would be replaced by members of the craft to which the brakemen belonged. In fact, some of the plaintiffs and members of the class to which they belonged actually were removed from their regular runs and replaced by brakemen. Plaintiffs then commenced this suit.

Based upon the verified complaint and the affidavit of James M. Jackson, one of the plaintiffs, the district court issued a temporary restraining order on October 31, 1944. On February 6, 1948, the district court issued a preliminary injunction.[1] At the hearing for preliminary injunction plaintiffs re-offered the Jackson affidavit and produced two witnesses, McFarland, the secretary of the First Division of the Adjustment Board, and Kirkpatrick, a Santa Fe official, who negotiated the agreement with the BRT. Plaintiffs also offered certain correspondence between them and the Santa Fe. The brakemen did not produce any witnesses on the hearing for the preliminary injunction, but offered a part of a deposition of one Palmer and the printed report of the Adjustment Board proceedings.

The order for the preliminary injunction was appealed to this court and was affirmed. 7 Cir., 171 F.2d 594, certiorari denied 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726. This court held that the award of the Adjustment Board was void, primarily because it was made without giving the train porters the required statutory notice,[2] and because their constitutional rights to participate in the proceedings before the Adjustment Board were denied. We also pointed out that the 1926 agreement between the Sante Fe and the BRT specifically provided that it did not change, alter or extend the rules pertaining to train porters,[3] and stated that in making the award the Adjustment Board had exceeded its statutory authority to interpret or apply the contract as it existed, and in effect had made a new and different contract between the brakemen and the railroad.

After remandment the brakemen-defendants filed a motion requiring plaintiffs and Sante Fe to produce certain documents for inspection and copying, bearing upon the question of actual notice to the plaintiffs of the Adjustment Board proceedings in the Sante Fe-BRT dispute. The district court denied the motion on the ground that the evidence sought pertained to the only issue herein, namely, the validity of the award of the Adjustment Board, and that this issue had been finally determined in connection with the hearing on the preliminary injunction, and the appeal therefrom. The district court then set a date for final hearing. In a colloquy with counsel for the brakemen-defendants, the court indicated that objections would be sustained if evidence of a certain type were offered on the final hearing, the court being of the opinion that the only real issue in the case had already been decided. A proposed offer of proof was then discussed, and the court ruled that an offer of proof could be made at the final hearing without the presence of witnesses in court, but that such witnesses might be produced if counsel so desired.

The final hearing was held June 29, 1950. Plaintiffs offered the testimony which had been received on the hearing for the preliminary injunction, including the affidavit of plaintiff Jackson, and a transcript of the testimony of witnesses McFarland and Kirkpatrick. No showing was made that

---

1. See D.C., 78 F.Supp. 984 for the findings of fact and conclusions of law.

2. Paragraph First (j) of Section 3, Railway Labor Act, 45 U.S.C.A. § 153, First (j), provides, "* * * the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

3. Article XXIX of the Working Agreement reads: "The term 'Trainman' or 'Trainmen,' as used in this agreement, is understood to mean freight and passenger Brakemen, and Baggagemen, with the further understanding that this definition does not change, alter or extend present application of these rules to baggagemen or train porters."

any of these witnesses were unavailable to testify personally. This evidence was received over the objection of the brakemen-defendants, who also made a motion for dismissal of the action. The brakemen-defendants then presented an offer of proof, which occupies some twenty pages in the printed record, as well as the published report of the proceedings of the Adjustment Board resulting in Award 6640, the basic contract or working agreement between the brakemen and the Sante Fe, and also the contract between the brakemen and the Santa Fe dated April 27, 1944.

Although much of the offer of proof was in general terms, it pertained to the following defenses: (1) that the named plaintiffs do not properly represent the persons on whose behalf the suit is brought; (2) the individual brakemen-defendants are not representatives of the Santa Fe brakemen; (3) plaintiffs had actual notice of the pendency before the National Railroad Adjustment Board of the dispute between the Sante Fe and the brakemen; that plaintiffs authorized the Sante Fe to represent their interests, and did not seek to intervene; (4) plaintiffs have not submitted their claims to the disputed work to the Adjustment Board; (5) the employment contract between the Sante Fe and BRT submitted to the Adjustment Board did in fact cover the head end braking work in dispute, and the Board's award did not pass on plaintiffs' claim to the disputed work; (6) the agreement of April 27, 1944, between Sante Fe and the BRT was intended to alter the basic working agreement between said parties and to supersede the interpretation made thereof in the award by the Adjustment Board.

All evidence offered by the brakemen-defendants at the final hearing was rejected. The district court made findings of fact and conclusions of law, and entered a decree granting a permanent injunction. In the findings of fact the court found that on the hearing for the preliminary injunction, the court had determined that the award of the Adjustment Board was void because actual notice of the hearing had not been given by the Adjustment Board to the train porters as required by statute, that the Court of

Appeals had likewise decided the question on the merits and had affirmed the judgment of the district court, and that no new facts had been elicited to show that the preliminary injunction should not be made permanent.

The district court also found that plaintiffs are members of a class or craft of railway employees composed entirely of colored persons, known as porter-brakemen or train porters, who have been employed by Sante Fe as such class or craft since 1899; that the named defendant-brakemen represented all Sante Fe brakemen as a class; that plaintiffs were employed at will but with seniority rights in their employment; that Santa Fe willed to terminate plaintiffs' employment only through the insistence of the BRT; that Santa Fe will, unless enjoined, displace the plaintiffs in their employment solely by reason of Order and Award 6640. There was no finding as to actual knowledge by plaintiffs of the Adjustment Board's proceedings during the pendency thereof, or whether plaintiffs authorized Santa Fe to represent them in the proceedings, or whether plaintiffs acquiesced in the position taken by Santa Fe. Also there was no mention made in the findings as to the contract between Santa Fe and BRT dated April 27, 1944.

▇▇▇ When this case was before us previously, the appeal was from a temporary injunction, and what we said in the opinion must be considered in that light. A temporary injunction is a provisional remedy granted before a hearing is had on the merits; its object usually is to preserve the subject of the controversy in its then existing condition—to preserve the status quo. 43 C.J.S., Injunctions, § 31, p. 466. On the application for a temporary injunction the court may consider affidavits and verified pleadings as evidence. 43 C.J.S., Injunctions, §§ 193–195, pp. 899–901. The general rule has been stated, "The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy, is not conclusive on the court on a subsequent hearing, and concludes no rights of the parties; * * *." 43 C.J.S., Injunctions, § 207, p. 937.

In Brown v. Quinlan, Inc., 7 Cir., 138 F.2d 228, at page 229, where the district court dismissed an injunction suit on the merits on a hearing on plaintiff's application for a temporary injunction, this court said: "In entering its order disposing of the application for temporary injunction, the District Court proceeded to dismiss the complaint without any hearing upon the merits. We assume that the court indulged the presumption that the evidence would be the same upon final hearing. Such an assumption was unjustified, for the parties had not stipulated that fact; nor had defendant waived its right to present additional evidence upon final hearing on the merits. Consequently the court could not properly thus finally dispose of the litigated issues. In Public Service Comm. v. Wisconsin Telephone Co., [289 U.S. 67, 53 S. Ct. 514, 77 L.Ed. 1036], the court expressly announced that the hearing upon application for interlocutory injunction does not involve a final disposition of the merits. The rule ordinarily controlling upon application for interlocutory injunction and that abiding upon hearing upon the merits are different. * * * Consequently, a decision granting or refusing a preliminary injunction is not conclusive upon either the court or the parties, on the subsequent disposition of the cause by final judgment. * * *"

As a conclusion of law the district court held that our previous opinion herein established as the law of the case that Order and Award 6640 was void. A recent Supreme Court case makes an enlightening comment on whether the law of the case can be established on a hearing for a preliminary injunction. In United States et al. v. United States Smelting Refining & Mining Co. et al., 339 U.S. 186, at pages 198–199, 70 S.Ct. 537, at page 544, 94 L.Ed. 750, the court said: " * * * The fact that an appeal could have been taken from the first order of the District Court was not because it was a final adjudication but because a temporary injunction had been granted in order to maintain the status quo. This was an interlocutory order that was appealable because Congress, notwithstanding its in-terlocutory character, had made it appealable. 28 U.S.C. § 1253, 28 U.S.C.A. § 1253. * * * We think that it requires a final judgment to sustain the application of the rule of the law of the case just as it does for the kindred rule of res judicata. * * *"

In Benson Hotel Corp. v. Woods, 8 Cir., 168 F.2d 694, at page 697, the court said: " * * * The decision of the trial court on granting the motion for preliminary injunction will not estop either of the parties on the trial of the case on its merits, nor would any determination of those questions by this court on appeal be binding on the trial court nor upon either of the parties in considering and determining the merits of the controversy. * * * There is sound reason for the rule that the decision of either the trial or appellate court in granting or denying the temporary injunction does not constitute the law of the case and will not estop the parties nor the court as to the merits of the case. * * *"

As heretofore indicated, at the hearing on the application for the permanent injunction herein the district court proceeded on the theory that the law of the case had been established, that Order and Award 6640 was void because formal notice had not been given by the Adjustment Board to the plaintiffs. Indeed there is language in our opinion which might be susceptible to that interpretation. We said, 171 F.2d at page 597: " * * * The only issue below, as well as here, is whether the Order of the Board is void for failure to give plaintiffs notice of the proceeding, as alleged in their complaint and as found by the court. * * *" We also said, 171 F.2d at page 599: " * * * we place our decision primarily upon the ground that it was made without notice to the porters, as the statute requires, and that their constitutional right to a hearing was denied."

If we had held the law to be that the statute required that the Adjustment Board, under all circumstances, give plaintiffs a formal notice of the proceedings pending before it, then we think the law of the case would have been established, for no-one contended that any such formal notice was

given. However, we did not hold, nor do the authorities sustain the view, that a formal notice is an essential condition precedent.

In Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, and on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, the Supreme Court was considering an award by the Adjustment Board under the Railway Labor Act of 1934. Referring to its decision in the same case, 325 U.S. 711, 65 S.Ct. 1282, the court on rehearing said, 327 U.S. at page 666, 66 S.Ct. at page 723: "In view of these facts there cannot be many instances in which an aggrieved employee will not have knowledge or notice that negotiations affecting his claim are being conducted or, if they fail, that proceedings are pending before the (Adjustment) Board to dispose of it. Although under our ruling his rights to have voice in the settlement are preserved, * * * we did not rule, and there is no basis for assuming we did, that an employee can stand by with knowledge or notice of what is going on with reference to his claim, either between the carrier and the union on the property, or before the (Adjustment) Board on their submission, allow matters to be thrashed out to a conclusion by one method or the other, and then come in for the first time to assert his individual rights. No such ruling was necessary for their preservation and none was intended."

In referring to Sec. 3, First (j), the court in a footnote said, 327 U.S. at p. 666, 66 S.Ct. at page 723: "But we did not undertake to define what was meant by 'due notice,' nor do we now. 'Due notice' conceivably could be given or had in a variety of forms, more especially when account is taken of the generally informal procedure of the Board. It would require at the least, we think, knowledge on the aggrieved employee's part of the pendency of the proceedings or knowledge of such facts as would be sufficient to put him on notice of their pendency."

In Estes et al. v. Union Terminal Co., 5 Cir., 89 F.2d 768, 771, the court held that actual notice to the employee was sufficient.

On the previous appeal to this court we said 171 F.2d at page 597: "* * * And the brakemen in the instant case, while conceding that the porters did not have formal notice, urge that they had actual notice, which was sufficient under the holding in the Estes case. The fallacy of this contention lies in the fact that *the record does not disclose* that the porters had notice of any kind prior to the entry of the Award. * * *" (Emphasis added.) It should be noted that we emphasized that the record then before us did not disclose actual notice to the plaintiffs.

 In spite of adverse court rulings the Adjustment Board apparently persists in the practice of giving notice only to the named parties to a proceeding. In many cases such a notice is insufficient. We so held on the previous appeal of this case. The holding in the Estes case, supra, is the same. There the court said, 89 F.2d at page 770: "Apparently, the Board held that Lane was not involved in the dispute and therefore was not entitled to notice under the provisions of section 3. In this we think the Board was wrong. Conceding that while Lane was employed as assistant station master he was not covered by the provisions of the contract, when he was given the position of gateman, he became subject to it and was as much involved in the controversy before the Board, as either Estes or Felton. Furthermore, he was materially affected by the order. * * * But in justice and fairness every person who may be adversely affected by an order entered by the Board should be given reasonable notice of the hearing. Lane was occupying the position of gateman. The order of the Board required his dismissal. No man should be deprived of his means of livelihood without a fair opportunity to defend himself. Plainly, that is the intent of the law. * * * It is not necessary for an employee to be named as a party to the proceeding before the Board to be involved in the controversy within the meaning of the law."

. We fully agree with the foregoing quotation from the opinion of the Court of Appeals for the Fifth Circuit. To say that the train porters are not involved in a

dispute which may result in brakemen supplanting them in their jobs is so unrealistic as to be absurd. Surely the employee who has a certain job is as much interested in that job as another employee who is trying to take it away from him.

We hold that all plaintiffs who were or could be adversely affected by the order and award were entitled to notice under the statute. Actual notice of the hearings for a sufficient period prior thereto to permit plaintiffs to be present and to be heard is all that is required. This is a proceeding in equity, and any plaintiff who had actual notice of the hearings, or authorized the Santa Fe to represent him thereat, is estopped from relying on the Board's failure to serve formal notice thereof upon him.

In their offer of proof the brakemen refer to plaintiffs receiving notice "during the pendency of the Adjustment Board's proceedings." This is a very indefinite phrase. The proceedings herein were pending before the Adjustment Board for a period of five years, and two of those years were after the award had been made. The statute requires the Adjustment Board to give due notice of all hearings to the employees involved in the dispute before it, and not merely notice of the fact that proceedings may be pending before the Board.

The district court therefore was in error in refusing to receive evidence which might sustain the claim of the brakemen-defendants that plaintiffs adversely affected did have reasonable actual notice of all hearings before the Adjustment Board, or that they had authorized the Santa Fe to represent them in such proceedings.

The statement in our previous opinion that the Adjustment Board had exceeded its authority to interpret the existing contract and had in effect made a new contract between the brakemen and the railroad was too broadly phrased. The case was before us on an appeal from an order granting a preliminary injunction; the paramount question before us was whether the district court had abused its discretion. It was only incumbent upon us to determine whether serious questions existed as to the validity of the award. Reference to Clause XXIX hereinbefore quoted demonstrated that a serious question as to the validity of the award did then exist. But we expressly did not rest our decision primarily on that point. In addition we emphasized that the effect of our decision was to place the parties in the same legal position they occupied on April 20, 1942.

The brakemen-defendants insist that the named plaintiffs do not represent the class of persons on whose behalf this suit is brought. At the hearing for the permanent injunction they offered to prove that a number of the plaintiffs had never performed the disputed work, and that others of the plaintiffs were employed for the first time after the date of the award. Even though such proof had been received, it would not have been fatal to the maintenance of this action.

The complaint names as the plaintiffs some forty-two persons residing in Texas, New Mexico, Colorado, and Kansas. Assuming that it should be proved that some of them were not adversely affected by the award, the balance named would still be representative of those whose jobs will be taken away by the enforcement of the award or a contract made pursuant thereto. A common question of law or fact affecting the several rights exists, and a common relief is sought. Rule 23, Federal Rules of Civil Procedure, 28 U.S.C.A., provides that if persons constituting a class are so numerous as to make it impracticable to bring them all into court, such of them, one or more, as will fairly insure adequate representation may sue or be sued. Assuming that defendants' offer of proof in this respect had been received, we hold that this suit was properly instituted as a class action, providing proof shows one of the forty-two qualifies to represent the class.

The objection that the nine individual brakemen-defendants, all of whom are members of BRT, their collective bargaining agent, do not represent the brakemen on the Sante Fe, being without merit, is rejected.

The brakemen-defendants urge as error that the district court should have received into evidence the contract between them and the Santa Fe dated April 27, 1944. They insist that under this contract they now have the right to perform the head end braking work on Santa Fe passenger trains, and that the plaintiffs have no right to enjoin the performance of that contract. Such a claim would seem to be immaterial to the right of plaintiffs to enjoin all defendants from the enforcement of Order and Award 6640, if it finally be determined on the merits that said award is void and that the contract of April 27, 1944, was entered into by the railroad by reason of said award having been rendered.

The order and decree for a permanent injunction is reversed, with directions to proceed in conformity with this opinion. In the interim and until the further order of the district court, the preliminary injunction will be reinstated and considered in full force and effect. It is so ordered.