## ALLAIN v. TUMMON et al.
## No. 10922.

United States Court of Appeals,
Seventh Circuit.
April 13, 1954.

Burke Williamson, Jack A. Williamson, Chicago, Ill., Adams, Williamson & Turney, Chicago, Ill., Wayland K. Sullivan, Cleveland, Ohio, of counsel, for appellant.

Jacob N. Gross, Andrew C. Scott, Chicago, Ill., Eldon Martin, J. L. Rice, Chicago, Ill., for defendant-appellee.

Before DUFFY, LINDLEY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

This action was brought to enjoin the enforcement of an award and order of the National Railroad Adjustment Board, Third Division. The Brotherhood of Railroad Trainmen filed a cross-complaint for enforcement. The plaintiffs herein include four employees of the defendant railroad, who brought this suit individually and as representatives of a class of employees called "lounge or tavern car attendants." The defendants include the members of the National Railroad Adjustment Board, Third Division, the Western Pacific Railroad, and the Brotherhood of Railroad Trainmen which is the collective bargaining representative of the dining car stewards of the railroad. These defendants are hereinafter referred to as Board, carrier, and Brotherhood, respectively. The district court permanently enjoined the carrier from removing the four employees above-mentioned from their jobs as lounge or tavern car attendants on Trains No. 17 and No. 18. The court also dismissed the cross-complaint.

For some 25 years previous to the commencement of this suit, the class represented by the plaintiffs has handled lounge or tavern car work on the carrier's trains. During this period such employees have been represented by a union and have had a collective bargaining agreement with the carrier. For a shorter period the dining car stewards have also had a collective bargaining agreement with the carrier. The complaint alleged, and the evidence showed, that at no time previous to February 1, 1951, had dining car stewards (represented by the Brotherhood) been employed by the carrier in a lounge or tavern car.

On March 10, 1949, the carrier commenced operation of a new train known as the California Zephyr, also designated as Trains No. 17 and No. 18. Included in the equipment of each train was a car known as a lounge-buffet or buffet-dormitory car. Although regular meals or hot food were not served in such car, some food, such as salads and sandwiches, was served. The railroad placed a tavern car attendant in charge of said car.

Claiming that a dining car steward should be in charge of the lounge-buffet car, the Brotherhood submitted to the carrier a claim covering the loss of time for five dining car stewards. The railroad denied the claim. On December 27, 1949, the Brotherhood submitted to the Third Division of the Board a claim for pay for the hours of work lost by the dining car stewards. The Board gave no notice to the plaintiffs or their union of the pendency of the claim by the Brotherhood. The members of the Board could not agree on a decision, and a referee sat in the case. On November 30, 1950, the Third Division issued Award No. 5123, finding that "the agreement was violated," and declaring, "Claim sustained." Accompanying the award was an order directing the carrier "to make effective Award No. 5123, * * * as therein set forth; and if the award includes a requirement for the payment of money, to pay to the employee (or employees) the sum of money to which he is (or they are) entitled under the award on or before February 1, 1951."

As a result of Award No. 5123 and the accompanying order, plaintiffs lost their jobs as tavern car attendants in the lounge-buffet cars on Trains No. 17 and No. 18 (California Zephyr). The procedure was as follows: On January 5, 1951, the carrier posted a notice that on January 10, 11, and 12 it would discontinue serving food in the lounge-buffet cars of the California Zephyr. Thereupon plaintiffs were demoted to waiters and pantrymen in the dining car service, the pay scale for such jobs being lower than the pay scale for tavern car attendants. Thereafter the carrier posted a notice that on February 2, 1951, the job of tavern car attendant would be abolished on the California Zephyr. Effective on that date dining car stewards were placed in charge of serving food in the lounge-buffet cars. The instant suit was started on February 13, 1951, and on February 20, 1951, plaintiffs resumed

their jobs as tavern car attendants, pursuant to the terms of a temporary injunction issued by the district court.

The district court held that the claim filed by the Brotherhood with the Board wherein it was sought to obtain for the dining car stewards the compensation then being paid by the carrier to the plaintiffs, had the necessary and practical effect of obtaining the lounge and tavern car attendants' jobs for said stewards. The court found that no notice of the claim of the Brotherhood was given to the plaintiffs or their union, nor did they have any knowledge thereof prior to the award. The court further found that the Board has followed a custom and practice of limiting notice of claims to the railroad brotherhood that files a claim and to the railroad against which the claim is filed, and that notice is never given to the individuals whose employment rights may be adversely affected if the claim is granted; that if plaintiffs or the minority union representing them had otherwise obtained knowledge of the pendency of said claim before said Board, and, as a result thereof, had appeared before said Board and endeavored to participate in said hearing, they would not have been permitted to file a written submission, offer testimony, cross-examine witnesses, make an argument in their behalf, or otherwise participate in said hearing.

█ █ The evidence clearly supports the foregoing findings of the trial court. In fact the Board makes no denial of the practice. Nevertheless the statute places upon the Board the duty of giving due notice of all hearings "to the employee or employees and the carrier or carriers involved in any disputes submitted to them." 45 U.S.C.A. § 153, first (j). It is well established that an award made by the Board in the absence of due notice to the involved parties is void and that its enforcement may be enjoined for that reason. Nord v. Griffin, 7 Cir., 86 F.2d 481, certiorari denied 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879; Hunter v. Atchison, T. & S. F. Railway Co., 7 Cir., 171 F.2d 594, certiorari denied, Shepherd v.

Hunter, 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726; Hunter v. Atchison, T. & S. F. Railway Co., 7 Cir., 188 F.2d 294, certiorari denied Hunter v. Shepherd, 342 U.S. 819, 72 S.Ct. 36, 96 L.Ed. 619, rehearing denied, 342 U.S. 889, 72 S.Ct. 172, 96 L.Ed. 667; Missouri-Kansas-Texas R. Co. v. Brotherhood of R. & S. S. C., 7 Cir., 188 F.2d 302; Illinois Central Railroad Co. v. Whitehouse, 7 Cir., 212 F.2d 22. All of these decisions were by this court.

In previous opinions we have commented on the reluctance, or indeed the unwillingness, of the Board to give notice to all "employees involved" in disputes submitted to it. In the second Hunter case we said, 188 F.2d 294, 300: "In spite of adverse court rulings the Adjustment Board apparently persists in the practice of giving notice only to the named parties to a proceeding. In many cases such a notice is insufficient." In the Illinois Central case we said, 212 F.2d 22, 29: "The point is that the Board must accord the opportunity to be heard. When that has been done, the beneficiary of the right may exercise it or not, as he (or it) sees fit. It is difficult to understand why the Board persists in its refusal to give formal notice when such refusal, as the cases disclose, oftentimes furnishes the basis for protracted litigation. Instead of serving as an agency for the prompt and expeditious settlement of labor disputes, it lends itself to the incubation of controversy and further dispute." From its action in the case at bar it is apparent that the Adjustment Board persists with unabated fervor in its often criticized practice.

█ It was established herein that had the plaintiffs or their union obtained the knowledge that the claim of the dining car stewards was pending before the Board, they would not have been permitted to file a written submission, offer testimony, cross-examine witnesses, make an argument, or otherwise participate in the hearing. It is thus apparent that a statement in our opinion in the second Hunter case is no longer applica-

ble. In that case we said, 188 F.2d 294, 301: "We hold that all plaintiffs who were or could be adversely affected by the order and award were entitled to notice under the statute. Actual notice of the hearings for a sufficient period prior thereto to permit plaintiffs to be present and to be heard is all that is required. This is a proceeding in equity, and any plaintiff who had actual notice of the hearings, or authorized the Santa Fe to represent him thereat, is estopped from relying on the Board's failure to serve formal notice thereof upon him."

Although we indicated in that opinion that actual notice of the hearing for a sufficient period prior thereto to permit plaintiffs to be present and to be heard was sufficient, it now appears that actual notice to the plaintiffs or their union would have availed them nothing. Notice without the opportunity to be heard does not satisfy the requirements of due process.

■ The Brotherhood contends that the carrier is in no position to raise the question of lack of notice to the plaintiffs. We ruled adversely to that contention in the Illinois Central case, where we quoted with approval the following from Kirby v. Pennsylvania R. Co., 3 Cir., 188 F.2d 793, 799: "Until the statutory requirements are met, it [the Board] has no more standing to produce legally effective orders than any voluntary group of citizens. Anyone to be affected by the purported order can raise the point that it has no legal foundation. We conclude that defendant carrier may raise the point that employees involved in the dispute had no notice or knowledge of the hearing, and no opportunity to be heard before the Adjustment Board. A party is entitled to an award that will protect it in the event that it complies."

The Brotherhood argues that the decision in the case at bar should not be governed by the rule announced in the decisions by this Court hereinbefore quoted, because the claim it submitted to the Board upon behalf of the dining car stewards was for money damages only. The Brotherhood says that it did not ask that plaintiffs be removed as tavern car attendants; hence plaintiffs were not "employees involved" in the dispute between the dining car stewards and the carrier.

The carrier admitted that it displaced the plaintiffs from their jobs as attendants in the lounge-buffet cars because of Award No. 5123, and the order made pursuant thereto. There is substantial evidence in this record to support the court's finding No. 7: "Said displacement of plaintiffs Allain, Hill, Osborne and Woods with Dining Car Stewards by defendant Western Pacific Railroad Company was solely by virtue of and as a result of and in pursuance to a certain Award by Third Division, National Railroad Adjustment Board, known as Award No. 5123 and Order entered pursuant thereto by said Third Division, National Railroad Adjustment Board, and the sole factors which caused defendant Western Pacific Railroad Company to displace the named plaintiffs and supplant them with Dining Car Stewards was said Award No. 5123 and Order entered pursuant thereto."

■ We note the contention of the Brotherhood that the carrier instead of replacing the plaintiffs with dining car stewards might have discontinued serving food in the lounge-buffet car or might have attempted to obtain an amendment of its contract with the dining car stewards. However, we hold that in presenting its claim to the Board the Brotherhood was in effect asking that the plaintiffs be replaced by dining car stewards. It follows that the plaintiffs were "employees involved" in the dispute within the meaning of § 3, first (j) of the Railway Labor Act and, having received no notice of the hearing and in any event being unable to participate in the hearing, the Adjustment Board was without jurisdiction to promulgate or render Award No. 5123 and its accompanying order. Upon the authority of previous decisions of this court hereinbefore quoted, we hold that the district court was correct in enjoining enforce-

ment of the award and enjoining the carrier from removing plaintiffs as lounge and tavern car attendants on Trains No. 17 and No. 18.

■■ The court filed separate findings of fact and conclusions of law as the basis of its order of dismissal of the Brotherhood's cross-claim against the carrier. The court found that the claim filed by the Brotherhood on behalf of the dining car stewards, if allowed, had the necessary and practical effect of obtaining the lounge and tavern car attendants' jobs for the dining car stewards, and that neither said lounge and tavern car attendants nor their union received formal or actual notice of the pendency of the Brotherhood's claim. Finding No. 5 was: "The National Railroad Adjustment Board, Third Division, has followed a custom and practice of limiting notice to the Railroad Brotherhood that files the claim and the railroad against which the claim is filed. Notice is never given to the individuals whose employment rights may be adversely affected if the claim is granted." The court also found that neither the Board's findings of fact, nor its Award No. 5123, nor the order based thereon, specified any individual to whom any money is due, nor any sum of money that is said to be due to anyone.

As conclusions of law, the court found that the findings of the Board and Award No. 5123 and the order were vague, indefinite, and wholly inadequate to furnish the basis for a prima facie case; that the carrier is entitled to an award sufficiently definite to support a plea of *res judicata*. The court also concluded that the carrier was entitled, in opposition to the cross-complaint, to raise the question that the award and order made pursuant thereto were null and void because the lounge car attendants were "employees involved" in the dispute, and were denied their statutory and constitutional rights to notice and an opportunity to participate in the hearing.

We think the findings of the court as to the cross-claim of the Brotherhood are amply supported by the evidence and that the conclusions of law are correct. We hold that the cross-complaint was properly dismissed.

The orders of the district court are affirmed.