BROTHERHOOD OF RAILWAY, AIR-LINE, AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS & STATION EMPLOYEES, Plaintiff-Appellee,

v.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Defendant-Appellant.

No. 81–2186.

United States Court of Appeals, Fifth Circuit.

May 17, 1982.

Rehearing and Rehearing En Banc Denied June 17, 1982.

Mike A. Hatchell, Tyler, Tex., for defendant-appellant.

Highsaw, Mahoney & Friedman, Clinton J. Miller, III, Washington, D. C., for plaintiff-appellee.

Before DYER,* SAM D. JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In 1973, the St. Louis Southwestern Railway (the Railroad) created a new job in the mechanical department of its gravity yard at Pine Bluff, Arkansas. W. E. Eastwood, a member of the carmen's craft, bid upon and received the position. A second carman, J. E. Purtle, eventually succeeded Eastwood in the job.

On May 16, 1973, T. F. Carpenter, a clerk represented by the Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC), filed a grievance submitting that

* Circuit Judge of the Eleventh Circuit, sitting by designation.

Eastwood's duties required him to "spend the preponderance of his time, each day, ordering parts and materials, tracing material orders by mail and telephone, Local and Long Distance; receiving, checking and stor[ing] materials and parts and mak[ing] distribution of same." Carpenter alleged that these are functions normally performed by clerical workers covered by the collective bargaining agreement between the Railroad and BRAC. That agreement defines "clerical workers" as "[e]mployees who regularly devote not less than four (4) hours per day to the writing and calculating incident to keeping records and accounts, rendition of bills, reports and statements, handling of correspondence and similar work." The Railroad denied the grievance petition, however, replying to Carpenter that members of several crafts other than clerks had to "perform a certain amount of paperwork, telephoning, checking, receiving and dispensing material in connection with the assigned work . . . ."

The dispute then proceeded to Public Law Board 1186 (the Board), an arbitration board created by agreement between BRAC and the Railroad, as authorized by the Railway Labor Act, 45 U.S.C. § 153 Second. The Board heard the evidence submitted by BRAC and the Railroad, but apparently failed to notify the carmen or their craft representatives of the hearing. On July 31, 1978, the Board issued an award finding that the work in dispute properly belonged to a clerical position covered by BRAC's agreement.[1] It also awarded damages in the equivalent of "eight hours each day, five days a week at the straight time of the Stock Clerk position, commencing on the date of the claim, May 16, 1973."

The award gave the Railroad thirty days (to August 31, 1978) in which to comply with its terms. According to BRAC, the Railroad created the required clerk's position at its Pine Bluff Yard, but refused to pay the monetary damages to Carpenter. On May 21, 1979, BRAC filed a petition in the district court seeking enforcement of the Board's award pursuant to 45 U.S.C. §§ 153 First (p) and 153 Second. The Railroad filed an answer and a cross-petition, pursuant to 45 U.S.C. § 153 First (q), contending that the award was void because the Board had failed either to notify the carmen's union, as required by both contract and law, or to consider the carmen's contract in resolving BRAC's claims.

The district court granted BRAC's motion for summary judgment on November 17, 1980. Having reviewed the Board's findings, the court concluded that members of the carmen's craft were not indispensable parties to the dispute, that the Board had given all the notice required under 45 U.S.C. § 153 First (j), and that the Railroad had waived any complaint concerning the failure to notify the carmen by failing to raise the issue before the Board. As part of its enforcement order, the court invited the parties to submit briefs, affidavits, and other evidence on the precise amount owed to Carpenter and on BRAC's entitlement to attorney's fees. Although BRAC submitted a memorandum on January 7, 1981, the Railroad apparently chose to ignore this opportunity. The court entered its final judgment on April 3, 1981, awarding $73,-364.46 to BRAC as Carpenter's compensation and $5,435.00 as attorney's fees.

---

1. The Board's findings in Award No. 259 included the following:

The record clearly establishes that Carman Purtle (successor to Eastwood) as alleged in the claim filed by claimant performed clerical work not incidental with his duties as carman and therefore the Clerk's Agreement was violated when he performed exclusively clerk's work for six hours each day. Carrier offered no proof supporting its allegation that the work complained of has been for years performed by non-clerks at various points on Carrier's system.

The duties of the carman position do not include the clerical work performed by the holder thereof.

Here the clerical work in dispute belongs to a clerical position within the Clerk's Agreement and once placed under the Agreement the clerical work in dispute in the case cannot be arbitrarily removed from the Clerk's Agreement and assigned to employees not under the Clerks' Agreement.

Finally, on May 1, 1981, the Railroad filed a Motion for Relief from Judgment, pursuant to Fed.R.Civ.P. 60(b), and a notice of appeal from the final judgment of April 3. The Rule 60(b) motion repeated the Railroad's objection to the Board's failure to notify the carmen and suggested, with respect to the damage amount, that the court should have reduced the Board's award by subtracting the salary drawn by Carpenter over the period of the violation. The court responded on May 21, 1981, that the correctness of its judgment on the notification was a matter for challenge on appeal, not under Rule 60(b). Moreover, the court held that relief from the damage calculation was undeserved since the Railroad had neglected its chance to present evidence and argument on the measure. The Railroad never filed a notice of appeal from the Court's action on this motion.

On appeal, the Railroad has reiterated the principal arguments described above. We affirm the district court's holding that the Railroad waived its objections to the Board's procedural error by failing to raise them before the Board. We also hold that the damages issue is not properly before us, since the Railroad raised this issue for the first time in its postjudgment Rule 60(b) motion and filed no notice of appeal from the district court's denial of that motion.

### A. The Notification Requirement

■ The Railroad insists that the Board's award is void because the Board failed to comply with the mandatory notice provision of section 3 First (j) of the Railway Labor Act, 45 U.S.C. § 153 First (j). Section 3 First (j) provides that "the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any dispute submitted to them." [2] The Railroad takes the position that the carman displaced by the

award was obviously an "involved" party; thus, the Board's failure to notify him or his bargaining representative of the hearing on BRAC's grievance rendered the award fatally defective from the start. According to BRAC, however, the Pine Bluff position sought by Carpenter was so obviously covered by the terms of the Railroad's agreement with BRAC that the Board was justified in resolving the dispute without implicating the carmen's craft. The district court agreed with BRAC, holding that "[u]nder the limited facts of this case, members of the Carman's Craft were not indispensable parties to the dispute submitted the Public Law Board No. 1186."

■ We believe that the Board erred in failing to notify the carmen. Our review of the record convinces us that the Board acted upon a perfectly reasonable belief that the disputed job lay well within the limits of BRAC's bargaining jurisdiction, that the Railroad had simply misassigned the job, and that the carmen's contract was, therefore, irrelevant. Nevertheless, this court has long interpreted section 3 of the Railway Labor Act as requiring notice to any party likely to be harmed or substantially affected by the result of the hearing. In *Estes v. Union Terminal Co.*, 89 F.2d 768 (5th Cir. 1937), we specifically held that the Adjustment Board should have given an employee the opportunity to appear before it reached a decision ousting him from his position. We reasoned that any displaced employee is materially affected by, and therefore involved in, such a determination:

Section 3 is rendered somewhat ambiguous by the use of the word "involved" instead of a more comprehensive term. But in justice and fairness, every person who may be adversely affected by an order entered by the Board should be given reasonable notice of the hearing.

2. The Public Law Boards authorized by 45 U.S.C. § 153 Second serve as private alternative forums to the National Railroad Adjustment Board and must conform to the same procedural restraints imposed on the Adjustment Board by § 153 First. *See O'Neill v. Public Law Board No. 550*, 581 F.2d 692, 694–95 (7th Cir. 1978); *Cole v. Erie Lackawanna*

*Railway*, 541 F.2d 528, 532–33 (6th Cir. 1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977). Thus, while references to "the Board" in our opinion generally pertain to Public Law Board No. 1186, a creature of private contract, any decisions or statutes delineating the powers and responsibilities of the National Adjustment Board are applicable.

Lane was occupying the position of gateman. The order of the Board required his dismissal. No man should be deprived of his means of livelihood without a fair opportunity to defend himself. Plainly, that is the intent of the law.

*Id.* at 770.

Moreover, in *Hunter v. Atchison, Topeka & Santa Fe Railway*, 188 F.2d 294, 300–01 (7th Cir. 1951), *cert. denied*, 342 U.S. 819, 72 S.Ct. 36, 96 L.Ed. 619 (1951), the Seventh Circuit expressly agreed with this reasoning. After quoting at length from *Estes*, the court wrote: "To say that the train porters are not involved in a dispute which may result in brakemen supplanting them in their jobs is so unrealistic as to be absurd. Surely the employee who has a certain job is as much interested in that job as another employee who is trying to take it away from him."

■ We are convinced, therefore, that the Board is obligated to notify an employee (or his representative) of any proceeding that may result in that employee's losing his position. This requirement should not prove burdensome in most instances, since a letter of notification to one or two union representatives normally will ensure that all "involved" parties are apprised of the dispute. In any event, inconvenience cannot excuse noncompliance with the law. *See Estes*, 89 F.2d at 771. *Estes* clearly established the rule that the Board must extend notice "to all persons who will be substantially affected by the order that may be entered by the Board, unless notice is waived." *Id.* It did not empower the Board to avoid this requirement *sua sponte* by determining at the threshold that a "substantially affected" third party could not possibly prevail on the merits. Thus the Public Law Board erred in failing to give the carmen an opportunity to plead their case, however ill-fated.

Lacking persuasiveness, however, is the Railroad's argument that this error renders the award void from its inception. The district court concluded that the Railroad

had "waived any objection that they might have had to the absence of a third party by failing to raise the issue in the prior [Board] proceedings." The Railroad insists, however, that the notice requirement is jurisdictional; that is, failure to comply strictly with statutory requirements deprives the Board of its power to issue an award binding on any party.

■ We do not believe that the Board's procedural error automatically voids the award. There is nothing in the Railway Labor Act to suggest that the notice provision of section 3 First (j) is any more "jurisdictional" than any other mandate imposed upon an agency by its enabling legislation. Certainly any party—carrier or employee—can challenge and set aside an award that results from a procedurally defective hearing. The aggrieved party still bears the ordinary responsibility, however, for preserving the error of which it complains by bringing the defect to the Board's attention during the hearing.[3]

■ In rejecting the Railroad's argument, we rely on the general rule that

[p]rocedural objections to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be; such contentions cannot first be made on appeal. It is imperative to an efficient and fair administration of justice that a litigant may not withhold his objections, await the outcome, and then complain that he was denied his rights if he does not approve the resulting decision.

*Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 380 F.2d 605, 608–09 (D.C.Cir.1967), *cert. denied*, 389 U.S. 928, 88 S.Ct. 289, 19 L.Ed.2d 279 (1967) (footnote omitted).

The most authoritative expression of this rule appears in *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), the decision on which the district court below relied. In *L. A. Tucker*, a disgruntled truck line sought to

---

**3.** Naturally, this does not apply to unnotified parties who are not present at the hearing.

invalidate an order by the Interstate Commerce Commission on the grounds that the Commission had not complied with section 11 of the Administrative Procedure Act, 5 U.S.C. § 1010, in appointing the examiner who approved the order. The truck line had not raised this point before the examiner or the Commission, but had waited until it petitioned for relief in district court to press the issue. The district court invalidated the order because of this procedural defect. On appeal, however, the Supreme Court admonished that

> orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.... Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body *not only has erred, but has erred against objection* made at the time appropriate under its practice.

344 U.S. at 37, 73 S.Ct. at 69 (emphasis added). The Court then dismissed the truck line's contention that this rule did not obtain because the Commission's procedural error had deprived it of jurisdiction. The defective appointment was "an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings," the Court concluded, "[b]ut it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objections its order should be set aside as a nullity." [4]

If the Railroad had raised this procedural issue during the hearing, or if the carmen had raised objections to the lack of notice when they first learned of the proceeding (and they certainly learned of it as soon as the carman was displaced, if not before), the Board's decisions would have to be set aside. But the carmen have never objected. Instead, the Railroad now objects, putatively on behalf of the carmen, after making no such objection throughout the regular proceedings under the statute. We cannot find the lack of notice to the unprotesting carmen any more jurisdictional than failure to follow the required legal procedures for the selection of the judge (the hearing examiner) in *L. A. Tucker*. Like the examiner issue in *L. A. Tucker*, the notice issue raised by the Railroad "is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and can prevail only from technical compulsion irrespective of considerations of practical justice." *Id.* at 36, 73 S.Ct. at 68.

Thus, although the case before us involves the procedural mandate of an entirely different statute, the logical appeal of the *L. A. Tucker* rule remains intact. In fact, we have relied in the past upon this rule in requiring timely objections to agency action under the Railway Labor Act. In *Brotherhood of Railroad Trainmen v. Central of Georgia Railway*, 415 F.2d 403 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), the appellant railroad had persuaded the district court to overturn an award because the Railroad Adjustment Board's failure to provide an oral hearing had violated section 3 First (j) of the Act—the same provision here in dispute. We observed, however, that the Railroad had failed to request a hearing when it submitted its case to the

---

4. It is interesting to note that even the two Justices who dissented from the holding in *L. A. Tucker* declined to base their objections on jurisdictional grounds. Justice Frankfurter observed that he did "not use the term 'jurisdiction' because it is a verbal coat of too many colors." 344 U.S. at 39, 73 S.Ct. at 70. Justice Douglas wrote: "Of course, an agency that flouts the mandate for fair examiners does not lose jurisdiction of the case. Even habeas corpus is no longer restricted to the testing of 'jurisdiction' in the historic sense." *Id.* at 41, 73 S.Ct. at 71. Justice Frankfurter suggested instead that the statutory requirement created an "unwaivable limitation" on agency power, whereas Justice Douglas complained that the agency's error had "permeate[d] the entire proceeding." The majority rejected both views, however, in its emphasis upon the necessity of contemporaneous objections as a prerequisite to appellate review.

Board, even though "it undoubtedly had a right to argue its case at that point." We then held that the carrier had "waived any rights it had to argue orally before the referee when it failed to ask for a hearing in its submission to the Board." 415 F.2d at 418.

In view of these authorities, we remain unpersuaded by the Railroad's argument that decisions in other circuits have established section 3 First (j) as a "jurisdictional" imperative. It is true that sister courts have characterized awards rendered in the absence of notice to an involved party as "void" or "illegal." *See, e.g., Brotherhood of Railroad Trainmen v. Templeton,* 181 F.2d 527, 534–35 (8th Cir. 1950), *cert. denied,* 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605 (1950); *Hunter v. Atchison, Topeka & Santa Fe Ry.,* 171 F.2d 594, 597–98 (7th Cir. 1948), *cert. denied,* 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726 (1949). The most forceful statement of this view occurs in *Kirby v. Pennsylvania Railroad,* 188 F.2d 793, 798–99 (3d Cir. 1951) in which the court conferred on carriers standing to raise the notice issue on behalf of unnotified employees. The court explained that carriers have a protectible interest in securing the settlement of all claims in a single proceeding since piecemeal arbitration might subject them to dual liability. It then added that

> there is another reason which, though technical, loses nothing in force thereby. The Board's authority to act is based upon the statute. Until the statutory requirements are met, it has no more standing to produce legally effective orders than any voluntary group of citizens. Anyone to be affected by the purported order can raise the point that it has no legal foundation.

None of these decisions, however, confronted the problem of whether contemporaneous objections to agency error are either advisable or necessary. The *Hunter*

and *Templeton* courts described the awards under review as illegal and void as a means of bolstering their laudable conclusion that an unnotified but involved employee should be able to challenge and void the award affecting him. Similarly, the *Kirby* court's comments on the connection between proper notice and the Board's power to act were included, without citation to any authority, as "another reason." The court, however, did not discuss the issue of requiring a timely objection to the lack of notice. In short, all of the phrases that the Railroad has culled from these decisions were unnecessary to their holdings and, although we are fully in accord with those holdings, we need not adopt any gratuitous implications that section 3 First (j) is "jurisdictional." After all, *Hunter, Templeton,* and *Kirby* were decided before the Supreme Court's opinion in *L. A. Tucker* dismissed the "jurisdictional" aspect of procedural errors and emphasized the importance of contemporaneous objections in administrative proceedings.[5]

Our adherence to the *L. A. Tucker* rule in the notice context promotes efficient and fair administration without sacrificing the rights of carriers or absent third parties. An award rendered in the absence of proper notice to all involved parties remains voidable by any party upon timely objection. The Railroad in this case could have enforced its right to a unified hearing and a single binding award by objecting to the Board of the carmen's absence. The carman, once ousted from his duties at the Pine Bluff facility, could have exercised his right to a hearing either by petitioning the court to enjoin the award or by initiating a separate grievance proceeding against the Railroad through his own union. While we recognize and support the Supreme Court's clearly articulated policy against such prolonged and bifurcated proceedings, *see Transportation-Communication Employees*

---

5. Cases decided in those circuits since *L. A. Tucker* have merely repeated the "void and illegal" language of the earlier decisions. *See, e.g., Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Railway,* 229 F.2d 59, 67 (8th Cir. 1956), *cert. denied,* 350 U.S. 997, 76

S.Ct. 548, 100 L.Ed. 861 (1956) (citing *Hunter* and *Templeton, supra*); *Allain v. Tummon,* 212 F.2d 32, 35 (7th Cir. 1954) (citing *Hunter*). Again, however, the issue of contemporaneous objection was neither raised nor considered.

*Union v. Union Pacific Railroad*, 385 U.S. 157, 164–66, 87 S.Ct. 369, 373–74, 17 L.Ed.2d 264 (1966),[6] we would achieve nothing but irony in remanding this case to the Board for a new hearing, four years after the award and nine years after the events underlying it, solely in an effort to encourage prompt and orderly settlements. By contrast, our reaffirmed insistence upon contemporaneous objections to agency errors should provide a recurring incentive for litigants to see that all involved parties are present and all procedural flaws eliminated before the Board completes its consideration of a dispute. Permitting the parties to hide trumps up their sleeve for appeal can only exalt endless gamesmanship over fair play and finality of judgment.

### B. Damages

■ The Railroad concedes that a Board award is generally conclusive of all issues, including damages. 45 U.S.C. § 153 First (q); *Denver & Rio Grande Western Railroad Co. v. Blackett*, 538 F.2d 291, 293–94 (10th Cir. 1976). Moreover, we have established that a district court may compute the actual dollars and cents to which an employee is entitled under the Board's award. *Sweeney v. Florida East Coast Railway*, 389 F.2d 113, 115 (5th Cir. 1968). In its Rule 60(b) motion asking the court to set aside its judgment, however, the Railroad sub-

mitted that the Board's award was so vague as to be incalculable. Alternatively, it argued that the court's computation of damages at $73,364.46, based on the straight-time wages of a stock clerk for eight hours a day, five days per week, from May 16, 1973 to December 12, 1978, was erroneously inflated because it failed to subtract the $63,956.61 earned by claimant Carpenter during this period.

Whatever merit these contentions may have, the Railroad once again has waited too long to raise its objections. It did not complain to the district court about the Board's damage award until after the court had rendered its judgment. Its objections to that award, raised for the first time in the postjudgment Rule 60(b) motion, are not properly before us since the Railroad filed no notice of appeal from the district court's denial of that motion, as required by Fed.R.App.P. 4(a)(1). Even if the issue were before us, we could hardly hold the district court to have abused its discretion in denying a Rule 60(b) motion in which the Railroad presented, for the first time, arguments and evidence that had been available to it throughout the proceeding. Neither before judgment, in its answer, cross-petition, and motion for summary judgment, nor after judgment, when the court expressly invited affidavits and briefs on the

---

**6.** In *Transportation-Communication Employees*, the Board faced a conflict over whether clerks or telegraphers should fill certain newly created positions. Although notified of the proceedings, the clerks declined to participate, and the Board made its findings (that the telegraphers were entitled to the jobs under their contract with the Railroad) without considering the clerk's agreement. When the telegraphers sued for enforcement, the district court and the Tenth Circuit held that the Board had shirked its responsibility to decide the entire dispute. Granting certiorari "in order to settle doubts about whether the Adjustment Board must exercise its exclusive jurisdiction to settle disputes like this in a single proceeding with all disputants present," the Court decided that "it must." 385 U.S. at 160, 87 S.Ct. at 371.

The Court ordered the district court to remand the case to the Board with instructions "to resolve this entire dispute upon consideration not only of the contract between the Railroad and the telegraphers, but 'in the light of

... [contracts] between the Railroad' and any other union 'involved' in the overall dispute, and upon consideration of 'evidence as to usage, practice and custom' pertinent to all these agreements." *Id.* at 165–66, 87 S.Ct. at 373–74 (quoting *Order of Railway Conductors v. Pitney*, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946)). The Railroad here relies on this passage for its suggestion that the Board's award in this case is void, even if the Board can be said to have complied with the notice provision, since the Board failed to consider all the "involved" contracts. Again, however, the issue is not whether an irregularity exists, but whether the Railroad must preserve its right to complain of the defect. The same reasons that compel us to insist upon a contemporaneous objection to the Board's breach of a statutory provision require us to conclude that the Railroad waived, through its silence, any complaint that it harbored concerning the Board's neglect of the carmen's contract, if in fact the contract was left unconsidered.

damages computation, did the Railroad bestir itself to assist the court by addressing the damages issue. "A defeated litigant cannot set aside a judgment because of his failure to interpose a defense that could have been presented at trial, or because he failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court." Wright & Miller, Federal Practice and Procedure: Civil § 2858 (1973) (quoted in *Couch v. Travelers Insurance Co.*, 551 F.2d 958, 959 (5th Cir. 1977)).

Accordingly, we cannot disturb the district court's computation of the damages awarded by the Board to claimant Carpenter. We also agree with the district court's holding that the Railroad waived its objection to the Board's failure to notify the "involved" carmen. The order of enforcement is, therefore,

AFFIRMED.

DYER, Circuit Judge, Sitting by Designation, specially concurring:

I concur in the result reached by the majority, but I travel a different road to get there.

The majority holds that notice must be given to "any party likely to be harmed or substantially affected by the result of the hearing"—in other words notice must be given to an indispensable party. I agree. But it then treats the notice provisions of 45 U.S.C. § 153 First (j) to an indispensable party as a "procedural" requirement. I disagree.

An award entered without notice to an "involved" (indispensable) third party is void—absolutely void, not merely voidable. The notice provisions are jurisdictional and cannot be waived. Unless there is notice a public law board is without power to enter a final award. *Kirby v. Pennsylvania R. Co.*, 188 F.2d 793, 798–799 (3rd Cir. 1951); *Hunter v. Atchison, T. & S. F. Ry. Co.*, 171 F.2d 594, 597–598 (7th Cir. 1948), *cert. den.* 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726; *Allain v. Tummon*, 212 F.2d 32, 35 (7th Cir. 1954); *Nord v. Griffin*, 86 F.2d 481, 483 (7th Cir. 1936), *cert. den.* 300 U.S. 673, 57 S.Ct.

612, 81 L.Ed. 879; *Order of Railroad Telegraphers v. New Orleans, Tex. & M.R. Co.*, 229 F.2d 59, 67 (8th Cir. 1956), *cert. den.* 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861; *Brotherhood of Railroad Trainmen v. Templeton*, 181 F.2d 527, 534–535 (8th Cir. 1950), *cert. den.* 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605.

The majority dismisses these authorities by suggesting that they did not consider "whether contemporaneous objections to agency error were either advisable or necessary". This erroneously assumes that lack of notice to an indispensable party is "error" rather than a "jurisdictional defect". Moreover whether an objection is "advisable or necessary" is of no moment where there is lack of notice to an indispensable party; because that party may raise, at any time, the consequential voidness of a board order. *Kirby, supra* at 188 F.2d 799; *Allain, supra* at 212 F.2d 36.

The majority's reliance on *Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 380 F.2d 605 (D.C.Cir.1967) is misplaced. The general rule concerning *procedural* objections is correctly stated and was applicable there where the union purposely refused to participate before the Special Board of Adjustment and then later complained that the evidence was not taken under oath and a transcript was not prepared by the Board. Obviously this was a procedural objection that was not timely made but had nothing to do with administrative agency jurisdiction.

In *Brotherhood of Railroad Trainmen v. Central of Georgia*, 415 F.2d 403 (5th Cir. 1969) which the majority cites as authority for its position, the railroad made no request for oral argument before the referee until after the referee had decided the case. We held that the carrier waived its rights because its procedural objections were not timely made. Again the question of administrative agency jurisdiction was not in question.

*United States v. L. A. Tucker Truck Lines*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) relied on by the majority as authority

for a waiver of notice to an indispensable party is inapposite. That case involved a failure to object to compliance with the technical procedure of the Administrative Procedure Act in the appointment of a hearing officer before the Interstate Commerce Commission. The case did not involve the Railway Labor Act, or an impediment to administrative agency jurisdiction.

I can find no authoritative support for the majority's conclusion that the requirements of notice in 45 U.S.C. § 153 First (j) to an indispensable party are procedural rather than jurisdictional and can be waived. But this case does not end there. The facts are undisputed. The Railroad and Brac entered into a labor contract pursuant to which a job classification was established for clerical employees who regularly devote not less than *four* hours per day doing defined clerical work. In 1973 a job was awarded to a member of the Carman Craft which required *six* hours of the defined clerical work per day.

It is crystal clear that there is a total absence of any competing union claims here which would make the Carman Craft an indispensable party. Nothing more is involved than an erroneous assignment of work by the Carrier. Under these circumstances the Act plainly did not intend that the courts should inject themselves into this kind of dispute. *See Transportation—Communication Employees Union v. Union Pacific Railroad Company*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).

The district court correctly determined that no third party notice was required to be given to the Carman Craft since it was not an "involved" union under the notice provisions of 45 U.S.C. § 153 First (j).