503 F.2d 58
 87 L.R.R.M. (BNA) 2432, 75 Lab.Cas. P 10,317
 BURLINGTON NORTHERN, INC., Plaintiff-Counterdefendant-Appellee,
v.
THE AMERICAN RAILWAY SUPERVISORS ASSOCIATION,
Defendant-Counterplaintiff-Appellant.
BURLINGTON NORTHERN, INC., Plaintiff-Counterdefendant-Appellant,
v.
THE AMERICAN RAILWAY SUPERVISORS ASSOCIATION,
Defendant-Counterplaintiff-Appellee.
 Nos. 73-1820, 73-1821.
 United States Court of Appeals, Seventh Circuit.
 Argued May 28, 1974.
Decided Sept. 17, 1974
Rehearing Denied Oct. 23, 1974.
 
 Alex Elson and Aaron S. Wolff, Chicago, Ill., and Edward J. Hickey, Washington, D.C., for American Railway Supervisors Assn.
 Ralph J. Moore, Jr., Washington, D.C., John L. Pilon, Chicago, Ill., for Burlington Northern.
 Morton Hollander, Chief, Appellate Section, Civil Division, Dept. of Justice, Washington, D.C., James R. Thompson, U.S. Atty., Gary L. Starkman, Asst. U.S. Atty., Chicago, Ill., General Counsel, Nat. Mediation Bd., Washington, D.C., for Nat. Mediation Bd.
 Before CLARK, Associate Justice, TONE, Circuit Judge, and CAMPBELL, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 This appeal arises out of a labor dispute between Burlington Northern, Inc. and the American Railway Supervisors Association (ARSA). Plaintiff Burlington Northern seeks a judgment declaring that it has no obligation to bargain on any subject with defendant ARSA, or to treat ARSA as the representative of any of its employees. Additionally, plaintiff asks the court (1) to declare that, despite the arbitration provision of the Employees Merger Protection Agreement to which plaintiff and defendant are parties, it need not arbitrate this controversy with defendant, and (2) to enjoin ARSA and co-defendant National Mediation Board (NMB) from persisting in their attempt to obtain resolution of the dispute through the arbitration procedure set forth in that agreement. Defendant counterclaims, asking that plaintiff be required to submit to arbitration concerning the interpretation and application of the Employees Merger Protection Agreement according to the terms of that agreement, and for $1,000,000 in damages and reasonable attorneys' fees and costs.
 
 
 2
 The District Court granted summary judgment for defendants on the complaint, holding that the court lacked jurisdiction to decide what was essentially a representation issue within the exclusive jurisdiction of the NMB. Burlington Northern, Inc. v. American Ry. Sup'rs Ass'n, 350 F.Supp. 897, 904 (N.D.Ill. 1972). On the same basis, the judge also granted plaintiff's motion to dismiss defendant's counterclaim. Burlington Northern, Inc. v. American Ry. Sup'rs Ass'n, 359 F.Supp. 1047, 1049-1050 (N.D.Ill.1973). We affirm although on other grounds, the court's dismissal of the railroad's complaint, but hold that plaintiff is required to proceed with arbitration under Section 9 of the Employees Merger Protection Agreement and therefore reverse the dismissal of defendant's counterclaim.
 
 
 3
 Plaintiff Burlington Northern, Inc. was formed on March 2, 1970 by the merger of the Chicago, Burlington & Quincy Railroad (CB&Q), the Great Northern Railway, the Northern Pacific Railway, and the Pacific Coast Railroad. The merged company has also leased the Spokane, Portland & Seattle Railroad. Each of the component railroads was-- and the Burlington Northern presently is-- a carrier subject to the Railway Labor Act, 45 U.S.C. 151 et seq. The Interstate Commerce Commission (ICC) authorized the merger and lease pursuant to Section 5 of the Interstate Commerce Act, 49 U.S.C. 5. Great Northern Pac. & B. Lines Merger, 331 I.C.C. 228 (1967), aff'd, United States v. United States, 296 F.Supp. 853 (D.D.C. 1968), aff'd, Northern Lines Merger Cases, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).
 
 
 4
 Prior to the merger, the craft or class of mechanical supervisors employed by the CB&Q was represented by defendant ARSA, which had been certified as the representative of these employees by the NMB after a representation election held on August 19, 1944. No union represented the mechanical supervisors employed by the other merging railroads. The most recent collective bargaining agreement entered into between ARSA and CB&Q is dated March 1, 1970, one day before the merger, and was in fact finally negotiated and executed by Burlington Northern and ARSA on or about April 2, 1970, one month after the merger. This agreement provided for changes in rates of pay, rules and working conditions of employees represented by ARSA employed by the Burlington Northern and working on the segment of the railroad formerly operated by CB&Q. By separate agreement also dated March 1, 1970, and also finally negotiated and executed between ARSA April 2, 1970, plaintiff agreed to make Arril 2, 1970, plaintiff agreed to make regular monthly dues collections from certain employees represented by ARSA provided the employees authorized the deductions. Plaintiff complied with the provisions of these and the predecessor collective bargaining agreements with ARSA, and continued to settle employee grievances with ARSA for several months after the merger date.
 
 
 5
 The craft or class of technicians employed by the Great Northern before the merger was also represented by ARSA, which had received NMB certification to represent the Great Northern technicians after a representation election held on December 7, 1960. The technicians on lines other than the Great Northern were not represented by any labor organization.
 
 
 6
 Since the merger there has been no challenge by any other union or any employees to the right of ARSA to represent the mechanical supervisors on the segment of the merged railroad formerly operated by the CB&Q, or to represent the technicians on the segment formerly operated by the Great Northern. There is thus no dispute involving competing employee groups, as envisioned in 45 U.S.C. 152 Ninth.
 
 
 7
 Before approving the merger the ICC, following the mandate of 49 U.S.C. 5(2) (f), imposed upon the new carrier conditions that would take effect at the time of consolidation and would protect the employees of the component lines. Certain of these protective provisions were incorporated in an Employees Merger Protection Agreement agreed to on January 18, 1968. Both plaintiff and defendant ARSA, as well as each of the component rail lines and five other unions, were signatory to the agreement.
 
 Section 8 of the agreement provides:
 
 8
 'The New Company (Burlington Northern) will take over and assume all contracts, schedules and agreements between said carriers and the labor organizations signatory hereto concerning rates of pay, rules governing working conditions, fringe benefits and rights and privileges pertaining thereto in effect at the time of consummation of the merger and will be bound by the terms and provisions thereof, subject to changes in accordance with the provisions of the Railway Labor Act, as amended, in the same manner and to the same extent as if the New Company had been a party thereto.'
 
 Section 9 provides, inter alia, that:
 
 9
 'In the event any dispute or controversy arises between the said carriers or the New Company and any labor organization signatory to this Agreement with respect to the interpretation or application of any provision of this Agreement . . . such dispute may be referred by either party to an arbitration committee for consideration and determination . . .. Should the members designated by the parties be unable to agree upon the appointment of the neutral member within ten days, either party may request the National Mediation Board to appoint the neutral member . . ..'
 
 
 10
 Commencing in the summer of 1970, several months after the merger, plaintiff refused to recognize and treat ARSA as the designated representative of either the mechanical supervisors formerly employed by CB&Q or the technicians formerly employed by the Great Northern. Plaintiff's repudiation of the ARSA collective bargaining agreements was apparently based upon the NMB's June 3, 1970 dismissal on the ground of mootness of a petition by technicians on the Great Northern seeking to invoke the jurisdiction of NMB under Section 2 Ninth. Plaintiff assets that 'it understood the NMB action to mean that the merger had terminated a separate existence of the Great Northern Technicians' bargaining unit.' In responding to an inquiry as to whether the dismissal notice was intended to imply that ARSA was no longer the certified representative, however, NMB Executive Secretary Thomas A. Tracy stated on July 14, 1970 that its action did not 'nullify or disturb any representation rights arising out of the certification issued' on December 7, 1960 declaring ARSA to be the representative of the Great Northern technicians. Moreover, in response to the affidavit (May 24, 1972) of the plaintiff's Vice President for Labor Relations that the NMB had 'ruled' that ARSA representation rights were terminated by the merger, the NMB submitted its Executive Secretary's affidavit (June 9, 1972) stating that 'no such determination was made, expressly or impliedly, in the National Mediation Board's dismissal notice of June 3, 1970.'
 
 
 11
 ARSA, contending that Burlington's refusal to deal with the duly authorized pre-merger mechanical supervisors and technicians union violated Section 8 of the Employees Merger Protection Agreement, sought arbitration of the dispute under the terms of Section 9 of that agreement. ARSA's demand for arbitration stated the question to be arbitrated in pertinent part as follows:
 
 
 12
 'Was Burlington Northern required by Section 8 of the merger protective agreement executed on January 18, 1968, . . . to take over and assume the collective bargaining agreement(s) between (CB&Q and ARSA for mechanical supervisors, and Great Northern and ARSA for technicians) . . . including the continuing right thereunder of the American Railway Supervisors Association to act as the representative of the employees covered by said agreements . . ..'
 
 
 13
 Plaintiff refused to proceed with arbitration under the Merger Protection Agreement and refused to designate a member of the arbitration committee. ARSA then, in accordance with the provisions of Section 9 of the Merger Protection Agreement, requested NMB to appoint a neutral referee. Thereupon plaintiff filed this action.
 
 
 14
 Before reaching the merits we must consider the threshold issue of whether this court has jurisdiction to decide the questions presented in the cross-appeals. The District Court held that the controversy between plaintiff and ARSA was in essence a Railway Labor Act representation dispute, the resolution of which must be left to the NMB, and on this ground, dismissed both the complaint and the counterclaim. We disagree with the District Court on this point. In our view, the dispute before us is not one under 45 U.S.C. 152 Ninth, because no employee or other union has challenged ARSA's certification. The cases cited by the District Court in support of its holding all involve representation disputes between unions or employee groups under45 U.S.C. 152 Ninth. Burlington Northern, Inc. v. American Ry. Sup'rs Ass'n, supra, 350 F.Supp. at 901, n. 8, and 904. The issue before the court in this case, the effect of the pre-merger agreement between the two parties to this action, is a common-law contract determination within the province of the federal courts and is not reserved to the exclusive jurisdiction of the NMB. We thus turn to the merits.
 
 
 15
 Plaintiff defends its refusal to bargain with ARSA and to submit to arbitration by relying on the admitted fact that ARSA does not represent a majority of the entire craft or class of either the mechanical supervisors employed by plaintiff or the technicians employed by plaintiff. Plaintiff's position is that ARSA is not the representative of the employees it seeks to represent because the NMB has determined, in exercising its certification responsibilities under 45 U.S.C. 152 Ninth, that a class or craft under 45 U.S.C. 152 Fourth must be carrier-wide in scope. (See, e.g., NMB, 16th Annual Report 1950, p. 22, and Representation of Employees of New York Central R. Co., 1 NMB Craft or Class Determinations 197-210 (May 27, 1941).) ARSA, says plaintiff purports to represent only the mechanical supervisors formerly employed by CB&Q and the technicians formerly employed by the Great Northern and does not represent either of these crafts or classes system-wide. The other mechanical supervisors and technicians in the plaintiff's system are unrepresented.
 
 
 16
 In making this argument plaintiff ignores the terms of the Employees Merger Protection Agreement, which anticipated the conditions that would exist after the merger, and specifically provided, in Section 8, that plaintiff will assume 'all contracts, schedules and agreements between said carriers and the labor organizations signatory hereto . . ..'
 
 
 17
 The Employees Merger Protection Agreement was a condition of the ICC approval of the merger, authorized by Section 5(2)(f) of the Interstate Commerce Act, 49 U.S.C. 5(2)(f). The agreement is not inconsistent with any provision of the Railway Labor Act, and if it were its provisions would be controlling, Brotherhood of Locomotive Engineers v. Chicago & North Western Ry., 314 F.2d 424, 431-432 (8th Cir. 1963), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1963); it was entered into by the parties to this case in contemplation of the merger and the conditions that would exist after the merger; and there is no reason it should not be given full force and effect.
 
 
 18
 In the agreement plaintiff recognized the labor organizations signatory to the agreement including ARSA, committed themselves to maintain and abide by all collective bargaining agreements until such agreements are changed pursuant to the procedures of the Railway Labor Act, agreed to a system for resolving disputes concerning the interpretation and application of the agreement, and agreed to a continued role for ARSA in the implementation of the merger agreement and in the interpretation, application and enforcement of existing collective bargaining agreements.
 
 
 19
 The language in Section 8 of the Employees Merger Protection Agreement to the effect that existing collective bargaining agreements can be changed in accordance with the procedures of the Railway Labor Act does not automatically render applicable the NMB's policy determination under the act that a class or craft bargaining unit must be system-wide in scope. Unless a representation determination is made pursuant to that Act, the voluntary agreement by plaintiff to recognize a collective bargaining representative of a class or craft that is not system-wide will be given effect. Compare Switchmen's Union v. National Mediation Board, 77 U.S.App.D.C. 264, 135 F.2d 785, 792 (1943), rev'd on other grounds, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). If the contrary were true, the Merger Protection Agreement, which became effective only when the merger became effective, would have become a nullity upon its effective date, and the representation rights of ARSA would be terminated by the very agreement that purports to continue them in force. Plaintiff itself recognized that this was not intended by the Employees Merger Protection Agreement when it entered into a new collective bargaining agreement with ARSA after the effective date of the merger and continued to recognize ARSA for all purposes for a period of several months after that date.
 
 
 20
 The NMB has twice repudiated plaintiff's contention that its action in dismissing the Great Northern technicians' petition on June 3, 1970 implied that the merger terminated ARSA's status as the certified representative of the technicians. The indications NMB has given as to its position in this matter are to the effect that it still recognizes ARSA as the bargaining representative under the collective bargaining agreements entered into between ARSA and plaintiff's predecessors. With the exception described below, there has therefore been no invocation of NMB's powers to determine representation under 45 U.S.C. 152 Ninth.
 
 
 21
 Plaintiff relies upon a fact that was not a part of the record before the District Court. In 1973 ARSA applied to the NMB to investigate and determine the representation of mechanical supervisors employed by Burlington Northern. A majority of the 569 eligible mechanical engineers chose not to participate in the ensuing representation election. Of the 153 who did vote, 139 voted for ARSA. In an order entered while this appeal was pending, the NMB found 'no basis for Certification' and dismissed the application, because fewer than a majority of the eligible employees voted in the election. This proceeding, occurring after plaintiff had refused for almost three years to honor its obligations under the Employees Merger Protection Agreement, could not justify or cure plaintiff's breach. In any event, the failure of ARSA to gain system-wide representation in an election it had requested itself did not affect its certification as representative of the mechanical supervisors on the CB&Q segment of the merged railroad.
 
 
 22
 When an agreement to arbitrate is one of the protections afforded employees under Section 5(2)(f) of the Interstate Commerce Act, the obligation to arbitrate will be enforced by the courts. Brotherhood of Locomotive Engineers v. Chicago & North Western Ry., supra, 314 F.2d at 433; New Orleans & Northeastern R.R. v. Bozeman, 312 F.2d 264 (5th Cir. 1963).
 
 
 23
 The District Court's order dismissing the complaint is affirmed. The order dismissing the counterclaim is reversed and remanded with directions that Burlington Northern be ordered to arbitrate its disagreement with ARSA, as provided in Section 9 of the Employees Merger Protection Agreement, and that the District Court give further consideration consistent with this opinion to ARSA's claim for damages, attorneys' fees and costs.
 
 
 24
 Affirmed in part and reversed in part.
 
 
 
 [1]
 Associate Justice Tom C. Clark of the Supreme Court of the United States (Ret.) and Senior District Judge William J. Campbell of the Northern District of Illinois are sitting by designation