**BURLINGTON NORTHERN INC.,**
**Plaintiff-Counterdefendant-Appellant,**

v.

**The AMERICAN RAILWAY SUPER-VISORS ASSOCIATION, Defendant-Counterclaimant-Appellee.**

Nos. 75–1352, 75–1598.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1975.

Decided Dec. 11, 1975.

Rehearing Denied Jan. 21, 1976.

Barry N. Gutterman, Chicago, Ill., Ralph J. Moore, Jr., Washington, D. C., for Burlington Northern.

Alex Elson, Aaron S. Wolff, Chicago, Ill., for American Railway.

Edward J. Hickey, Jr., Railway Labor Executives' Assoc., Washington, D. C., for amicus curiae.

Before CLARK,* Associate Justice (Retired), and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner, Burlington Northern, Inc. (the Railroad), instituted this action seeking to set aside three awards of the National Railroad Adjustment Board, Fourth Division, handed down in favor of the American Railway Supervisors Association (the Union). The claims involved in these awards arose after the March 1970 merger of four carriers into this Railroad. As a result of the merger, the employees of the separate carriers became employees of the Railroad. Before the merger, the Union represented the craft or class of mechanical supervisors employed by the Chicago Burlington & Quincy Railroad (CB&Q), one of the component carriers. Prior to the merger the CB&Q had entered into a Maintenance of Membership Agreement with the Union, providing in Section 1 that employees subject to the collective bargaining agreement between the CB&Q and the Union "shall, as a condition of their continued employment subject to said Agreement, become members" of the Union. Section 3 provided that "Upon receipt of a demand from the Association (Union) * * * that an employee's seniority as foreman be terminated for failure to pay the periodic dues, initiation fees or assessments, referred to in Section 1 hereof, the Carrier will cause such action to be taken within thirty (30) days from the date of receipt of such demand * * *."

On January 18, 1968, the Railroad, the component carriers, and six unions, including this one, entered into an Employees' Merger Protection Agreement. Section 8 of that Agreement provided that the Railroad would assume existing collective bargaining agreements "subject to changes in accordance with the provisions of the Railway Labor Act," and Section 9 provided for the arbitration of any dispute "with respect to the interpretation or application of any provision of this Agreement." See *Burlington Northern, Inc. v. American Railway Supervisors Association*, 503 F.2d 58, 61 (7th Cir. 1974).

After the merger, the National Mediation Board held a representation election pursuant to Section 2 Ninth of the National Railway Labor Act (45 U.S.C. § 152 Ninth) to determine the representative of the craft or class of mechanical supervisors employed by the Railroad. As a result of the election, the Union was denied certification. Previously, the Railroad declined to bargain with the Union over changes in pay and working conditions under the pre-merger working

---

* Associate Justice Tom C. Clark (Retired) of the Supreme Court of the United States is sitting by designation.

agreements. In *Burlington Northern, Inc. v. American Railways Supervisors Association, supra,* this Court held that the dispute between the Union and the Railroad over the effect of the Employees' Merger Protection Agreement as to the Union's representation rights with respect to some of the Railroad's mechanical employees must be submitted to arbitration under Section 9 of that Agreement. 503 F.2d at 64. Before that decision was handed down, the Union submitted 40 claims to the National Railroad Adjustment Board, Fourth Division, seeking compliance with certain provisions in the pre-merger agreements between the Union and the CB&Q. Two of the claims sought enforcement of the Maintenance of Membership Agreement (Sections 1 and 3) as to employees F. A. Beffert and G. G. Ferrell. A third claim alleged that the Railroad had failed to bulletin notices of vacancies in mechanical department foreman positions in violation of Section 10(b) of the collective bargaining agreement. The remaining thirty-seven were monetary claims on behalf of employees.

The labor members of the Adjustment Board and Referee Weston held that under the Employees' Merger Protection Agreement, the Railroad was bound by the collective bargaining agreements that had been in effect between the CB&Q and the Union; accordingly the Board enforced the Maintenance of Membership Agreement with respect to Beffert and Ferrell in Awards 2714 and 2715. In addition, the Board found a violation of Section 10(b) of the collective bargaining agreement and ordered compliance with that provision in Award 2716. Based on its decision that the collective bargaining agreement between the CB&Q and the Union applied to the Railroad, the Board also rendered decisions favorable to employees on the remaining claims.

Subsequently the Railroad instituted this action to set aside the awards concerning Beffert and Ferrell, pursuant to Section 3 First (q) of the Railway Labor Act (45 U.S.C. § 153 First (q)), on the ground that the employees should have been given notice of the proceedings before the Adjustment Board. The lawsuit also attacked those two awards and Award 2716 on the ground that issues involving construction of the Employees' Merger Protection Agreement must be decided by arbitration under Section 9 of that Agreement.[1] The Railroad is paying the monetary claims of individual employees involved in the other thirty-seven awards in order to avoid further litigation. The Union counterclaimed for enforcement of the three contested awards pursuant to Section 3 First (p) of the Act (45 U.S.C. § 153 First (p)), and in response the Railroad defended that Beffert and Ferrell are indispensable parties.

Citing *Burlington Northern, Inc. v. American Railway Supervisors Association, supra,* the district court denied the Railroad's motion for summary judgment and sustained the Union's counterclaim. About three months thereafter, the district court denied the Union's petition for an award of attorneys' fees of $8,565. The correctness of both orders is before us through the Railroad's appeal from the order enforcing the awards and the Union's cross-appeal with respect to the denial of attorneys' fees.

1. *Failure to Give Notice to Beffert and Ferrell*

The Railroad contends that Awards 2714 and 2715 are void because Beffert and Ferrell were not given notice of the Adjustment Board proceedings under Section 3 First (j) of the Railway Labor Act (45 U.S.C. § 153 First (j)), which provides in pertinent part that "the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any dispute submitted to them." The test whether an employee is involved in a dispute before the Adjustment Board

---

1. Other grounds advanced have been abandoned.

220

should be a practical one, suited to the specialized function of the Board. See *Elgin, Joliet & Eastern Ry. Co. v. Burley*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928. "But in justice and fairness every person who may be adversely affected by an order entered by the Board should be given reasonable notice of the hearing." *Hunter v. Atchison, Topeka & Santa F. Ry. Co.*, 188 F.2d 294, 300 (7th Cir. 1951), certiorari denied, 342 U.S. 819, 72 S.Ct. 36, 96 L.Ed. 619; *Estes v. Union Terminal Co.*, 89 F.2d 768, 770 (5th Cir. 1937). The statutory requirement of notice incorporates this notion of due process: one will not be bound by a judgment when not afforded an opportunity to challenge it. See *Allain v. Tummon*, 212 F.2d 32 (7th Cir. 1954); *Nord v. Griffin*, 86 F.2d 481, 484 (7th Cir. 1936), certiorari denied, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879. It therefore follows that an employee is involved in a dispute only when the Board's decision purports to adjudicate the rights or duties of the employee. *Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry. Co.*, 229 F.2d 59 (8th Cir. 1956), certiorari denied, 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861. However, no notice need be given where, because of the limited nature of the issues before the Board, the individual employee is not precluded from asserting rights personal to him in a subsequent proceeding.

The collective bargaining agreement "is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate * * * the collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." *Transportation-Communication Employees Union v. Union Pacific Co.*, 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264; *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578–579, 80 S.Ct. 1347, 4 L.Ed.2d 1409. When the parties disagree, the Adjustment Board is charged with interpreting this "common law." In this case, the Board was presented with the question: does the relationship between the Union and Railroad include a requirement that the Railroad direct employees to join the Union or lose their seniority? The Board was not called upon to decide whether these two employees could claim exemptions, under the agreement, to the Maintenance of Membership provisions.[2] As the Union concedes, the two awards require nothing of the employees; they are free to advance in a subsequent action either before the Board or an appropriate court any reasons why they cannot be compelled to join the Union. We hold, therefore, that the two employees need not be given notice in this case.

2. *Failure to Make Beffert and Ferrell Parties to Counterclaim for Enforcement*

■ Although not raised below, the Railroad now contends that the Union's counterclaim for enforcement of Awards 2714 and 2715 should have been dismissed for failure to join Beffert and Ferrell as indispensable parties. The Railroad admits that this question turns on whether Beffert and Ferrell were entitled to notice (reply br. 30). Because we hold that the employees need not be given notice, there is no merit to the Railroad's contention (see Part 1 *supra*).

2. We need not decide whether the employees would be entitled to notice if one of the parties before the Board lacked sufficient interest in the dispute to insure the basic fairness of the procedure. In this case, the question adjudicated by the Board involved an obligation of the Railroad on which the Union and Railroad had adverse positions.

This case, therefore, is distinguishable from the jurisdictional dispute cases relied on by the Railroad. E. g., *Order of Railroad Telegra-* *phers v. New Orleans, Texas & Mexico Ry., supra; Allain v. Tummon, supra; Brotherhood of Railroad Trainmen v. Templeton*, 181 F.2d 527 (8th Cir. 1950), certiorari denied, 340 U.S. 823. In those cases, the carrier would be indifferent as to which union performed the work and therefore could not be relied upon to represent the interest of the union not given notice of the proceeding. Cf. *Transportation-Communication Employees Union v. Union Pacific Co., supra*.

Rule 19(a) of the Federal Rules of Civil Procedure governs. It provides in relevant part:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

Thus initially we are called upon to determine whether the district court correctly refused to order joinder of Beffert and Ferrell in compliance with Rule 19. See *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 771 (7th Cir. 1973), certiorari denied, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102. We need to consider whether the action cannot go forward without the presence of the two employees only if joinder was required. See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936.

In this case the Union's successful counterclaim seeks to enforce two awards requiring the Railroad to direct Beffert and Ferrell to become members of the Union. Since the district court's order enforcing Awards 2714 and 2715 does not require Beffert and Ferrell to take any action, the court is able to afford the "complete relief" sought by the Union without requiring the joinder of the individual employees. Second, insofar as this record shows, neither Beffert nor Ferrell has claimed an interest relating to the subject of the action. The Railroad admits the employees are not bound by the awards (reply br. 29, 32). The employees are free to raise whatever rights they possess in a subsequent proceeding. The district court's order, therefore, does not impair their ability to preserve their own interests. Finally, Section 6 of the Maintenance of Membership Agreement indemnifies the Railroad from consequences of terminating any employee's seniority as foreman for non-membership in the Union. If Beffert and Ferrell decide not to join the Union and lose their seniority as foremen, their remedy is against the Union. The Railroad will not be subjected to inconsistent obligations. None of the tests of the rule have been met in this case. Therefore, the employees need not be joined in this action.

3. *Failure to Submit These Disputes to Arbitration*

██ As to all three awards, the Railroad contends that the issues presented to the Adjustment Board were within the exclusive jurisdiction of the special arbitration tribunal created by Section 9 of the Employees' Merger Protection Agreement. Section 9 provides "In the event any dispute or controversy arises: * * * with respect to the interpretation or application of any provision of this agreement, * * * such dispute may be referred by either party to an arbitration committee for consideration and determination." The Railroad contends that this language vests exclusive jurisdiction in the arbitration panel to decide disputes concerning the Merger Protection Agreement. However, the jurisdiction of the arbitration panel is limited to matters involving interpretation of the Merger Protection Agreement. In contrast, the claims before the Adjustment Board in Awards 2714 and 2715 were that the Railroad violated the Maintenance of Membership Agreement of May 3, 1962, when it refused to require foremen Beffert and Ferrell to become members of the Union. The claim involved in Award 2716 was that the Railroad violated Section 10(b) of the collective bargaining agreement between the Union and the CB&Q by not bulletining vacancies in mechanical department foreman positions. All claims involving violation of pre-merger contracts

were within the jurisdiction of the Adjustment Board. Section 3 First (i) of the Railway Labor Act (45 U.S.C. § 153 First (i); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co.*, 353 U.S. 30, 39, 77 S.Ct. 635, 1 L.Ed.2d 622. In *Burlington Northern, Inc. v. American Railway Supervisors Ass'n, supra*, 503 F.2d at 62, 63, we noted *seriatim* that the Employees' Merger Protection Agreement kept such prior agreements in effect.[3] These claims were therefore properly before the Adjustment Board.

### 4. Failure to Award Attorneys' Fees to Union

The Railroad's petition for review was filed on July 19, 1972, under Section 3 First (q) of the Railway Labor Act (45 U.S.C. § 153 First (q)), which contains no provision for the recovery of attorneys' fees. The Union counterclaimed for enforcement of the awards pursuant to Section 3 First (p) (45 U.S.C. § 153 First (p)). Section 3 First (p) provides that in an enforcemant suit the prevailing petitioner "shall be allowed a reasonable attorney's fee, to be taxed and collected as if part of the costs of the suit" (45 U.S.C. § 153 First (p)). After obtaining summary judgment on January 31, 1975, the Union petitioned for attorneys' fees for 168 hours of legal services at $50 an hour, or a total of $8,400. In addition, Washington counsel for the Union sought $165, making a grand total of $8,565. In a brief order, the district court denied attorneys' fees on April 24, 1975. We reverse.

Until 1966, only the person for whose benefit an Adjustment Board award was made could file an enforcement suit against a recalcitrant carrier under Section 3 First (p). Carriers could obtain review of Adjustment Board awards by refusing to comply with them and then being sued for enforcement. However,

there was no provision in the statute enabling the losing party, whether railroad or employee, to institute a court action. In 1966, Section 3 First (q) was enacted to permit unsuccessful employees and carriers to file petitions for review of Adjustment Board awards. Unlike Section 3 First (p), Congress did not see fit to provide for the recovery of reasonable attorneys' fees in suits for review under Section 3 First (q).

The Railroad argues that it commenced this action for review of the awards and hence Section 3 First (q) governs the question of attorneys' fees. However, the Railroad has not shown any Congressional intent to repeal the attorney fee provisions of Section 3 First (p) by the enactment of Section 3 First (q). Attorneys' fees are awarded in the Railway Labor Act in order to redress the imbalance in the wealth of the parties. An individual employee may find much of his award dissipated if forced to bear the costs of the litigation; a union may forego enforcing its rights because the expense of district and appellate court consideration could outweigh the benefits of the award. Congress addressed this problem in Section 3 First (p) and concluded that a railroad whose position on the merits has been rejected by the Adjustment Board should not be given a second chance to prevail simply because the opposing party cannot afford to try the case. See *Dieringer v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 278 F.Supp. 211, 214 (E.D.Wis. 1968). This policy applies without regard to whether the request for court-ordered compliance is made by way of a separate action or by means of a counterclaim to a petition for review.

In addition, to hold that Section 3 First (q) governs would result in a statutory scheme contrary to the intent of Congress. Under Section 3 First (q) a railroad can seek review immediately

---

**3.** The dispute there was whether under Section 9 of the Employees' Merger Protection Agreement the Railroad had to arbitrate its post-merger dispute as to whether it still had an obligation to bargain with the Union or to treat it as the representative of any of its employees (503 F.2d at 59), thus necessarily requiring an "interpretation or application" of the Employees' Merger Protection Agreement within the reach of its arbitration clause.

after the award is rendered; the union or employee must wait under Section 3 First (p) until the time period for railroad compliance set in the award expires. Therefore, if the Railroad were correct, it could always avoid attorneys' fees under Section 3 First (p) by racing to the courthouse and filing a petition for review under Section 3 First (q) before the aggrieved employee could file an enforcement suit. Nothing in the legislative history of the 1966 amendments to the Railway Labor Act shows that a carrier should be able to defeat employees' or their unions' rights to attorneys' fees by refusing to comply with an Adjustment Board award against the carrier and simultaneously filing a petition for review of the award. See *Denver & Rio Grande Western R.R. v. Blackett*, 398 F.Supp. 1205 (D.Colo.1975).

The effective date of each of the three Awards in question was June 23, 1972; the petition for review was filed in July, indicating that the Railroad was not going to comply. Because the Railroad filed suit rather than comply with the three Awards, the Union was obligated to petition for enforcement. The awards are not self-executing; a court order is necessary to insure compliance. Therefore, if the Union had not filed its counterclaim, the Railroad would be free to ignore an unfavorable court ruling. In addition, the counterclaim under Section 3 First (p) was a compulsory one within the meaning of Rule 13(a) of the Federal Rules of Civil Procedure.[4] If the Union had not made its claim under Rule 13(a), it would be lost and could not later be asserted. *Brotherhood of Locomotive Firemen & Enginemen v. Butte, Anaconda & Pacific Ry.*, 286 F.2d 706, 709–710 (9th Cir. 1961), certiorari denied, 361 U.S. 864, 80 S.Ct. 122, 4 L.Ed.2d 104; see *White Motor Corp. v. International Union, United Automobile, Aerospace &*

*Agricultural Implement Workers*, 365 F.Supp. 314, 317 (S.D.N.Y.1973), affirmed, 491 F.2d 189 (2d Cir. 1974); 3 Moore's Federal Practice, ¶ 13.12 *et seq.*

In support of the order denying attorneys' fees to the Union, the Railroad relies on *United Transportation Union v. Patapsco & Back Rivers R. Co.*, 59 F.R.D. 374 (D.Md.1973), affirmed, 487 F.2d 1399 (4th Cir. 1973), and an unreported order in *REA Express, Inc. v. Brotherhood of Railway, Airline and Steamship Clerks*, 1975 CCH Labor Law Reports ¶ 10,546 (S.D.N.Y.1974). In the former, the carrier had complied with the award under its bona fide interpretation thereof. The union's petition for enforcement of the award as interpreted by the union resulted in a remand to a Special Board of Adjustment to determine whether the employees were entitled to full restitution of back pay. Since the petition of the union there was more akin to a petition for review under Section 3 First (q) than to an enforcement suit, Judge Kaufman concluded that the case was "within the spirit of § 153 First (q)," so that the union was not entitled to an allowance of attorneys' fees. Here there was no need to obtain a clarification of the Adjustment Board awards and the carrier was not complying with them. Consequently, the citation of the *Back Rivers* case is inapt. The second case relied upon by the Railroad is, we believe, in conflict with the mandate of Section 3 First (p) with respect to attorneys' fees. Therefore, we decline to follow it.

In this case, the Railroad did not contend below nor in our Court that the Union's legal fees should have been allocated between the Section 3 First (q) petition and the Section 3 First (p) counterclaim, and the work was probably intertwined. Therefore, it would be inappropriate to remand the case for such an

---

4. Even if the counterclaim was not compulsory under the rule, the Union would be required as a practical matter to seek enforcement. Section 3 First (r) of the Act (45 U.S.C. § 153 First (r)) imposes a two-year statute of limitations. To comply with this provision, the Union would have to file its action for enforcement while the Railroad's petition for review was still pending. If such a separate action were filed, it is likely that consolidation under Rule 42(a) of the Federal Rules of Civil Procedure would have been ordered.

224

allocation. The reasonableness of the fees not having been disputed in the district court, the Union should receive the $8,565 claimed. The Union should also receive reasonable fees for the time spent on appeal No. 75–1352 involving the dispute on the merits. Because the question of attorneys' fees in appeal No. 75–1598 is one of first impression in a court of appeals, it would be inappropriate to permit the Union to recover for the time attributable to that issue.

The order of January 31, 1975, granting the Union's motion for summary judgment is affirmed. The order of April 24, 1975, denying the Union's petition for the allowance of attorneys' fees is reversed with directions to enter judgment of $8,565 for the legal services rendered by counsel for the Union in the district court and with directions to enter judgment for reasonable attorneys' fees in No. 75–1352 in this Court consistent herewith. Costs on both appeals are to be taxed against the Railroad.