The LONG ISLAND RAIL ROAD COMPANY, Petitioner,

v.

UNITED TRANSPORTATION UNION, Respondent-Counterpetitioner.

No. 75–C–747.

United States District Court, E. D. New York.

Dec. 14, 1976.

George M. Onken, Jamaica, N. Y., for petitioner.

Highsaw, Mahoney & Friedman, Washington, D. C., by Edward D. Friedman, John O'B. Clarke, Jr., Washington, D. C., of counsel, for respondent-counterpetitioner.

Memorandum of Decision and Order

MISHLER, Chief Judge.

By a memorandum of decision and order entered July 13, 1976, this court dismissed the carrier's petition for review and granted the union's counterpetition for enforcement of the award rendered by Public Law Board No. 1426. Pursuant to the court's directive, respondent United Transportation Union (UTU) has filed an application for attorney's fees incurred in the prosecution of its counterpetition and in defense of the Long Island Rail Road's (LIRR) petition.

Respondent's application marks the culmination of protracted litigation concerning a collective bargaining agreement executed by the parties in February, 1972. The agreement, which was to operate from January 1971 through December 1973, provided *inter alia* for the payment of a series of wage increases to UTU members. However, Phase II of the Economic Stabilization Act of 1970, 84 Stat. 799, as amended, was in effect during that period, and Pay Board approval was required before any wage increases could be initiated. The parties sub-mitted the agreement to the Pay Board for approval, and in October, 1972, the Board issued an order setting maximum wage rates. Thereafter, a dispute arose between the carrier and the union concerning the computation of the retroactive wage increase for the period extending from June 26, 1972 through November 12, 1972. The matter was referred to Public Law Board No. 1426, a special adjustment board convened pursuant to Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153 Second. On April 1, 1975, the Board issued an award upholding the union's position.

On May 15, 1975, the LIRR filed a petition, pursuant to Section 3 First (q) of the Railway Labor Act, 45 U.S.C. § 153 First (q), seeking review of the Board's determination; they challenged the validity of the award in light of the October, 1972 Pay Board order setting maximum wage rates. The carrier argued compliance would cause them to perform an illegal act in paying wages exceeding the maximum rate imposed. The union, in turn, filed its answer and counter-petitioned for enforcement pursuant to Section 3 First (p) of the Act, 45 U.S.C. § 153 First (p). On July 13, 1975, this court entered a memorandum of decision and order dismissing the carrier's petition and granting the union's counterpetition. The court further ordered the LIRR to pay UTU reasonable attorney's fees.

Respondent now seeks to recover $31,071.55 representing the cost of legal services incurred in the defense of the LIRR's petition and in the prosecution of its own counterpetition. The carrier asserts a two-pronged attack against the union's application.

The carrier principally contends that separate issues were presented by its petition and the union's counterpetition. Its review petition, questioning the legality of the adjustment board award, they argue, should appropriately be considered a subsection (q) type action. They point out that 45 U.S.C. § 153 First (q) makes no provision for the recovery of attorney's fees by the prevailing party. The union's counterpetition, the carrier asserts, raised a completely separate

issue, i. e. whether the carrier had failed to comply with the arbitrator's award. The railroad argues that since attorney's fees are recoverable only in actions commenced under subsection (p),[1] there must be an allocation between the legal services performed in regard to the counterpetition and those directed towards the review petition. The carrier contends that since the only issue before the court on respondent's motion for judgment on the pleadings was the legality of the adjustment board's order, and the bulk of the research, and argument was directed at this issue, the union's entitlement to fees is limited. Alternatively, petitioners proffer the argument that even if the union is able to recover fees for defending the subsection (q) action, their requests are clearly excessive.

It is respondent's position that the distinction drawn by petitioner is both arbitrary and artificial. They argue that the petition and counterpetition raised the same issue, i. e. whether compliance with the adjustment board's award would subject the railroad to government proceedings for violation of the Pay Board's maximum wage rate schedule. It is obvious, they claim, that the work necessitated in seeking enforcement and in defending against the petition was so intertwined as to be inseparable. Moreover, the union argues that every hour of work for which they seek reimbursement was documented. Hence, its request was by no means excessive.

During early attempts to establish a viable system of compulsory arbitration for the settlement of minor disputes, Congress found it necessary to strengthen the then existing award and enforcement procedures. In 1934, an amendment to the Railway Labor Act was added which provided for enforcement actions in district courts when the carrier failed to comply with an adjustment board award. Public L. No. 73–442, § 3(p), 48 Stat. 1192. In order to

redress the imbalance of wealth and minimize the adverse financial consequences that could result in prosecuting an enforcement claim, provision was made for the recovery of attorney's fees when a recalcitrant carrier was ordered to comply.

As it was, the right to judicial review of adjustment board awards, in essence, laid only with the carrier. If an employee's claim was sustained, the carrier could force review by refusing to comply and defending against a subsection (p) action for enforcement. On the other hand, if an employee's claim was rejected, the claimant was left without a remedy. Because of this "incongruous situation" and the inherent unfairness in the scheme as it existed, Congress in 1966 passed the present subsection (q) which provided an equal opportunity for judicial review. 1966 U.S.Code Cong. & Admin.News pp. 2285, 2287. However, no provision was included for the recovery of attorney's fees by the prevailing party parallel to that contained in subsection (p). Moreover, the committee reports and congressional debates are silent on the issue.

■ Congress' silence seemingly represents a deliberate decision to preclude recovery of fees in subsection (q) actions. *United Transportation Union v. Patapsco & Back Rivers Railroad Co.,* 59 F.R.D. 374, 377 (D.Md.1973), *aff'd* 487 F.2d 1399 (4th Cir. 1973). Yet, it should not be construed as a condonation of a scheme which would permit a carrier to dissipate the benefits of an award by winning the race to the courthouse and initiating a review proceeding under subsection (q). *Burlington Northern Inc. v. American Railway Supervisors,* 527 F.2d 216, 222–223 (7th Cir. 1975). The crucial question that must be answered, therefore, when the carrier files a claim under (q) and the union a counterpetition under (p), is whether the predominant underlying issue is more appropriately deemed an ac-

---

1. Title 45 U.S.C. § 153 First (p) provides in pertinent part:
   ". . . if the petitioner shall finally prevail he shall be allowed a reasonable attor-
   ney's fee, to be taxed and collected as part of the costs of the suit. . . ."

tion for review or enforcement. *See United Transportation Union v. Patapsco & Back Rivers Railroad Co., supra* at 377.

While both parties variously defined the issue presented to this court for determination, the question answered was whether compliance with the arbitration award would expose the LIRR to enforcement proceedings or other governmental action for violating the October, 1972 order of the Pay Board. Title 45 U.S.C. § 153 First (q) authorizes the initiation of a review proceeding only when a party is aggrieved by the Board's failure to make an award, by their failure to include certain terms in an award, or by the terms of the award themselves. We do not believe, however, that the predominant issue raised herein fell within the framework of a subsection (q) type proceeding. Obviously, an award was rendered but judicial clarification of the award's terms was not necessary. The sole question presented concerned the carrier's ability to comply, and whether the award could be validly enforced.

Petitioner's reliance on *United Transportation Union v. Patapsco & Back Rivers Railroad Co., supra,* is misplaced. There the carrier complied with the award pursuant to its own interpretation of the Board's determination. The union, nevertheless, initiated a court proceeding seeking enforcement according to its interpretation. The court treated the case not as one in which there had been a failure to comply, but as one in which additional terms needed to be included in the award to cure the ambiguity. *Id.* at 377. Because of the unusual nature of relief sought in the union's enforcement petition—an elucidation of the terms of the award—the court found the union's claim to be more in the nature of a (q) type review proceeding, and remanded the matter to the Board. Here no dispute arose over the meaning of the Board's determination; no ambiguity was evident.

It was only in order to avoid subsequent compliance that the carrier sought review in this court. Since the award itself was not self-executing, the union was essentially compelled to counterpetition for enforcement. Where it was apparent that the petitioner never intended to comply within the time frame established in the award,[2] it would contravene the intent of Congress to consider the matter a subsection (q) claim for review thereby precluding the recovery of attorney's fees. Such a holding is consistent with the precautionary caveat issued in *Patapsco* where the court warned against incorrectly labeling a true enforcement claim a (q) type proceeding. *Id.* at 377.

To definitively allocate the services performed by counsel between those rendered in defense against the carrier's petition and those channeled towards their enforcement efforts would be both impossible and artificial. The union's answer and counterpetition are contained in the same set of papers. As well, only a single memorandum of law, which sought rejection of the carrier's contentions and affirmance of their enforcement claim, was submitted in support of the union's motion for judgment on the pleadings. Where the issues raised by both petitions were identical, any attempt to identify the services performed in answering the petition and distinguish them from those rendered in prosecuting the counterpetition is fruitless. This court holds, therefore, that the essential nature of the predominant underlying issue was that of a subsection (p) enforcement claim, and the recovery of attorney's fees is proper.

Accordingly, the union's application for attorney's fees incurred by Mr. Friedman's work is granted. The Clerk of the Court is directed to enter judgment in favor of respondent-counterpetitioner, United Transportation Union, in the amount of $19,-752.80, and it is

SO ORDERED.

---

**2.** The Adjustment Board's award rendered April 1, 1975 commanded compliance within 45 days of the date of the award. On the 45th day, May 15, 1975, the LIRR filed its review petition.