The Manhattan Shirt Company, plaintiff, v. United States; William von Rabb, Commissioner of Customs; Dennis T. Snyder, Regional Commissioner of Customs (Region II); Anthony M. Liberta, Area Director of Customs, J.F.K. Airport, Jamaica, New York, defendants

Court No. 81-12-01609

(Dated December 15, 1981)

*Rode & Qualey*, attorneys for plaintiff, by *Michael S. O'Rourke and Patrick D. Gill* for the plaintiff.

*J. Paul McGrath*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, by *Jerry P. Wiskin*, for the defendants.

FORD, *Judge:* Plaintiff has moved, pursuant to Rule 65, for a preliminary injunction. This matter was brought on by an Order to Show Cause issued by this court on December 1, 1981 and hearing was set for December 10, 1981. Plaintiff seeks to enjoin defendants, their delegates and officers and agents subordinate to them for denying entry or withdrawal from warehouse for consumption of John Henry men's fitted shirts, visaed under Textile Category 640–D, of man-made fibers, which were produced or manufactured in Korea on or after October 31, 1981. The merchandise presently before the court, entry 4701–82–354288–4, covered by protest 1001–1–013244, is sought to be released by plaintiff.

By way of background it appears that in 1972 the United States negotiated a bilateral textile and apparel import restraint agreement with twenty-five leading export countries, including Korea. The agreement covered, among other things, men's and boys' shirts, non-knit, of the dress, sport, and work type. The current bilateral agreement with Korea was negotiated in 1977 and contains two separate quotas for man-made fabric shirts, Categories 640–D and 640–O. Category 640–D covers dress shirts, while 640–O covers "other" shirts. On September 17, 1979 the United States Customs Service issued "Textile Category Guidelines for Fabric and Garments Reported Under Various Textile Authorities". This was promulgated as C.I.E. 36/79.

On September 29, 1981, the Committee for the Implementation of Textile Agreements ("CITA"), published a notice in the Federal Register (46 F.R. 47649–50), which adjusted the 1981 twelve-month level of restraint within Textile Category 640. Category 640–O (sport shirts) was increased by over 159,000 dozen shirts, but nevertheless opened and closed on the same day. Accordingly, an embargo was placed upon sport shirts (640–O).

On October 8, 1981 "CITA" published in the Federal Register (46 FR 49939–40) a notice amending the export visa requirements for certain man-made fiber apparel products from the Republic of Korea. This notice did not cancel the requirement that the exporter place a "D" or an "O" on the visa. On or after October 13 merchandise in Textile Category 640 exported from Korea requires a visa designation of "D" or "O" which agrees with the customs classification. In the case at bar the shirts were imported under a 640–D visa. The Customs Service refused entry of the merchandise based upon their position that they are not properly classifiable under the TSUS numbers designated for Textile Category 640–D. At the time of attempted entry Textile Category 640–O was filled and the merchandise embargoed. The quota, however, for dress shirts at that time was not filled.

Plaintiff filed a protest on November 4, 1981 pursuant to the provisions of 19 U.S.C. 1514(a)(4) and 19 CFR 174.21(b), against the exclusion of merchandise covered by Warehouse Entry WH 4701–82–354288–4. Request was made for expedited treatment and for referral to Import Specialist Bayer who had indicated the protest would be denied. On November 13 counsel for plaintiff was called by Customs to ascertain the location of the warehouse where the merchandise was stored. On November 16, 1981 plaintiff's counsel was advised that the warehouse entry could not be located. On November 18, 20, 23, 24, and 25 additional calls were placed to officials in the protest section requesting the protest be forwarded to Import Specialist Bayer. The protest was denied on November 27, 1981 and this action commenced December 1, 1981 by the filing of a Summons and Verified Complaint, an Order to Show Cause and a Motion for a Preliminary Injunction.

In paragraph 1 of its complaint plaintiff alleges the court has jurisdiction pursuant to 28 U.S.C. 1581(a), 1581(h), 28 U.S.C. 1581(i)(3)(4), and 28 U.S.C. 1585. Inasmuch as plaintiff has filed a protest which has been denied under section 515 of the Tariff Act of 1930 and has instituted a timely action in this court by the filing of a Summons and Complaint, this court has jurisdiction under 28 U.S.C. 1581(a). It is, therefore, not necessary to consider the applicability of the remaining sections under which jurisdiction is claimed.

In enacting the Customs Courts Act of 1980, Congress stated the court "is to be guided by the same factors utilized by a federal district court when it considers a request for a preliminary injunction" (H.R. Rep. No. 1235, 96th Cong., 2d Sess. 61 (1980)). The factors utilized by the district court are set forth by Chief Judge Markey in *S. J. Stile Associates Ltd.* v. *Dennis Snyder, et al.,* 68 CCPA —, C.A.D. 1261, 646 F. 2d 522 (1981). The court set forth the following as requisites for a preliminary injunction:

> (1) A threat of immediate irreparable harm;
> (2) that the public interest would be better served by issuing than by denying the injunction;
> (3) a likelihood of success on the merits; and
> (4) that the balance of hardship on the parties favored appellant. *Grimard* v. *Carlston,* 567 F. 2d 1171, 1173 (CA 1 1978); 11 C. Wright and A. Miller, Federal Practice and Procedure § 2948 (1973); see generally, Developments in the Law—Injunctions, 78 Harv. L. Rev. 944 (1965).

Due to the extraordinary nature of preliminary injunctions the courts have long required that such relief be utilized sparingly. *Asher* v. *Laird,* 475 F. 2d 360 (C.A.D.C. 1973), *Dormann* v. *Boozer,* 414 F. 2d 360 (C.A.D.C. 1969).

At the hearing held on December 10, 1981, plaintiff called four witnesses on its behalf and defendant called one witness. The record establishes the imported shirts were excluded from classification by virtue of having a square shirttail. The evidence adduced at the hearing, for the purpose of establishing likelihood of success, indicates the shirts meet all the requirements of a dress shirt except for the square tail. A substantial amount of evidence was also adduced with respect to irreparable harm. Even if the court were to assume plaintiff has established a threat of irreparable harm and likelihood of success and has further established that the balance of hardship inures in favor of plaintiff, the court must still consider the question of public interest, since this case involves quotas arrived at as a result of an agreement between the United States and the Republic of Korea.

Plaintiff's motion for a preliminary injunction, if granted, would result in plaintiff obtaining the ultimate relief it hopes to obtain after a trial on the merits, i.e., the release of the merchandise into the trade and commerce of the United States.

This question was considered in *Associated Dry Goods Corporation* v. *United States, et al.*, 1 CIT 306, Slip Op. 81–47, wherein Judge Re made the following observation:

> In cases which seriously affect the public interest, a court of equity will require a much stronger showing before granting a preliminary injunction than is required when only private interests are at stake. *Virginia Ry. Co.* v. *System Federation*, 300 U.S. 515, 552 (1937). In cases of serious doubt, the discretion of the court must be exercised in a manner that would achieve the larger objectives of the public interest. See *Hecht Co.* v. *Bowles*, 321 U.S. 321, 331 (1944).
>
> A preliminary injunction should be denied if it will adversely affect the public or other interested parties for which, even temporarily, an injunction bond cannot compensate. *Virginia Ry. Co.* v. *United States*, 272 U.S. 658, 674 (1926). The court should withhold such relief until a final determination of the controversy, even though the delay may be burdensome to the plaintiff. *Yakus* v. *United States*, 321 U.S. 414, 440 (1944). *See also Virginia Petroleum Jobbers Association* v. *F.P.C.*, 259 F. 2d 921, 927 (D.C. Cir. 1958).
>
> Assuming plaintiff has overcome the burden of showing the probability of irreparable harm and the likelihood of success on the merits, or alternatively, that the parties have presented serious questions of law and that the balance of the hardships tips in favor of the plaintiff, the court must still protect the public interest.

The court therein further stated:

> Preliminary injunctions are generally granted to preserve the status quo pending final determination of the controversy between the parties. *Holiday Tours*, at 844; *Hunter* v. *Atchison, T. & S.F. Ry. Co.*, 188 F. 2d 294, 298 (7th Cir. 1951). When

the granting of a motion for preliminary injunction would give a plaintiff all the advantages which would be obtained as a result of a final favorable adjudication of the controversy, the motion ordinarily should be denied. *Selchow & Righter Co.* v. *Western Printing & Lithographing Co.*, 112 F. 2d 430, 431 (7th Cir. 1940).

In this case the requested injunction sought is against the enforcement of a quantitative restriction of general application on importations. Hence the plaintiff does not seek to preserve the status quo, but rather seeks to change it for its own pecuniary advantage. It is equally clear that a change would necessarily involve the temporary lifting of the existing restriction to permit plaintiff's importations to enter the stream of commerce throughout the United States. The market disruption repercussions are impossible to calculate in advance. Certainly they would inevitably affect the public interest and those of third parties in ways which could not possibly be compensated by an injunction bond. No bond could indemnify all of the interests affected, directly or indirectly, by the temporary lifting of the quantitative limitations.

The granting of plaintiff's request for an interlocutory injunction would achieve the ultimate relief sought in this action.

In the case at bar, since the requested injunction is against the enforcement of embargoed merchandise, it is not one which seeks to retain the status quo. A court should not grant temporary relief in the form of a preliminary injunction which will dispose of the case on the merits. *Dunn* v. *Retail Clerks Int'l. Ass'n. A.F.L.-C.I.O., Local 1529*, 299 F. 2d 873 (C.A. 6 1962). This being the fact, coupled with the question of public interest, the court concludes that the potential harm to the public interest outweighs the potential injury to plaintiff.

Under all of the circumstances, it is the determination of the court that plaintiff request for a preliminary injunction be denied.

For the foregoing reasons it is hereby:

ORDERED that plaintiff's motion for a preliminary injunction be and the same hereby is denied; and it is

FURTHER ORDERED that defendant file its answer to the plaintiff's complaint on or before December 20, 1981.